UNITED STATES, Appellee

v

CHARLES J. CHINN, Private First Class, U. S. Army, Appellant

6 USCMA 327, 20 CMR 43

No. 6579

Decided September 2, 1955

*Lieutenant Colonel Harley A. Lanning, Lieutenant Colonel George M. Thorpe, First Lieutenant Carl D. Hall* and *First Lieutenant Philip L. Evans* were on the brief for Appellant, Accused.

*Lieutenant Colonel Thomas J. Newton* was on the brief for Appellee, United States.

## Opinion of the Court

PER CURIAM:

This accused was convicted by general court-martial of two offenses of the wrongful use of a narcotic drug and one breach of restriction under Article 134, Uniform Code of Military Justice, 50 USC § 728. In addition, he was found guilty of absence without leave under Article 86, Uniform Code of Military Justice, 50 USC § 680. He was sentenced to bad-conduct discharge, total forfeitures, and confinement for three years. The convening authority reduced the period of confinement to two years and otherwise approved. A board of review in the office of The Judge Advocate General of the Army affirmed, and we granted review to determine whether the law officer erred in failing to instruct on knowledge by the accused of his use of habit-forming drugs.

The accused was suspected of being a user of narcotics, and on June 4, 1954, his company commander directed that he report to the hospital for the purpose of furnishing a sample of urine. Subsequent analysis revealed the presence of morphine in the specimen. On the same day, he was restricted to his company area, and the restriction was still in effect on July 17, 1954. Prior to the latter date, charges were preferred against the accused for the alleged offense committed on June 4, 1954. On the 17th day of July 1954, he was observed dressed in civilian clothes, departing from the unit area by climbing over the fence. Some seven hours later he reappeared at his unit. Because of his breach of restriction he was interviewed by an officer immediately upon his return. His eyes were glassy, his speech was glib but incoherent, and he was nervous and jumpy. There was no odor of alcohol on his breath, and he appeared to be under the influence of some narcotic. Because of his physical condition, a second urine specimen was taken from him and when analyzed, it, too, disclosed the presence of morphine in his system. However, no clinical evidence of the use of narcotics was found when the specimens were taken.

The accused testified that urine specimens were obtained from him on May 4, 1954, and July 18, 1954. He insisted that the testimony of the Government was incorrect in that no specimen was given by him on June 4, 1954. He asserted that he had never used narcotics, and to support his contention he exhibited his arms to the court-martial members. He mentioned that he had

no enemies who would try to injure him and the only way he could account for the presence of morphine was that the laboratory had simply made a mistake in furnishing a positive report, either by confusing his specimens with others, or by erring in the analysis. Finally, he explained that after breaching his restriction on July 17, 1954, he had proceeded to the NCO Club in Yokohama, Japan, where he had ingested a large quantity of an alcoholic concoction composed of scotch and milk. His consumption of the mixed drink was corroborated by a member of his battery.

In United States v Grier, 6 USCMA 218, 19 CMR 344, we held that:

". . . when, as here, an accused has testified he honestly did not know he had ingested any drug proscribed by law, and his testimony is not inherently improbable, unworthy of belief, or rendered incredible by other facts and circumstances found in the record, he has raised an issue of ignorance of fact to be resolved by the court-martial."

Furthermore, it was our expressed conclusion in that case that law officers must instruct on an issue of honest ignorance of fact if it is raised reasonably by the evidence. However, in United States v Greenwood, 6 USCMA 209, 19 CMR 335, and United States v Brown, 6 USCMA 237, 19 CMR 363, we laid down the rule that if the evidence in the record does not disclose an honest ignorance because accused's testimony is unworthy of belief, then the failure to instruct is immaterial. We believe this case is controlled by that rule.

The accused and his individual civilian counsel proceeded initially on the theory that the finding of narcotics in the urine specimens of the accused was the result of laboratory errors and nothing else. This was the theory developed by defense counsel during the cross-examination of Lieutenant Antonides, the laboratory toxicologist under whose supervision the analyses were made. The accused testified in similar vein, and buttressed that theory by insisting that the first specimen was obtained in May, rather than June, 1954. As a secondary approach to establish that there must have been a mix-up, accused testified he had never used narcotics, but in the light of this record no reasonable man would believe that assertion. Twice his actions were such as to lead officers to believe he had used narcotics. On both occasions, the suspicions were confirmed by urinalysis. He was restricted pending trial for the first offense and obviously the opportunity to acquire a habit-forming drug during that period would be limited. While in a restricted status, he was impelled by some desire to get to town undetected. It is a known fact that narcotic users become addicted to its use and they will go to any lengths to obtain a dosage. Accused's only assigned reason for leaving the area on that occasion was that he just wanted to get out. Upon his return to camp, his physical characteristics were such that an officer who interviewed him concluded he was under the influence of a drug and that conclusion was later confirmed by a laboratory test. Accused's only alibi for his condition was that while absent he had consumed some scotch whisky mixed with milk and yet the odor of liquor was not detected by those who were in a position to determine its presence.

In our view, it is unbelievable that this accused could twice ingest narcotics and have their effects so vividly noticeable without honestly knowing he had done so on at least one of the occasions. Particularly is that true when third parties could, by sight and conversation, detect the symptoms of dope with such accuracy. Moreover, the circumstances of the last occasion point unerringly to a break for liberty to obtain relief. During the short absence the urge must have been partially satisfied as the physical indicia were so clearly present upon return and the scotch and milk alibi would not convince any reasonable man that the source of the morphine would be found in that drink. Thus, we conclude the law officer's instructions were fully adequate to meet the issue raised reasonably by the evidence.

The decision of the board of review is affirmed.