UNITED STATES, Appellee

v.

David PABON, Airman Basic
U.S. Air Force, Appellant.

No. 94–0856.
CMR 29878.

U.S. Court of Appeals for
the Armed Forces.

Argued April 3, 1995.

Decided Sept. 14, 1995.

For Appellant: *Captain Todi S. Carnes* (argued); *Colonel Jay L. Cohen* (on brief); *Captain Gilbert J. Andia, Jr., and Captain Mark J. Simms.*

For Appellee: *Colonel Jeffery T. Infelise* (argued); *Colonel Thomas E. Schlegel and Major John H. Kongable* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

1. In early 1992, appellant was tried by a general court-martial composed of a military judge sitting alone at Eaker Air Force Base, Arkansas. Contrary to his pleas, he was found guilty of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a dishonorable discharge, as well as confinement and forfeiture of $350 pay per month for 10 months. On April 20,

1992, the convening authority approved this sentence. The Court of Military Review * affirmed in an unpublished opinion on March 25, 1994. 1994 WL 108866.

2. On November 30, 1994, this Court granted review on the following issue raised by appellate defense counsel:

WHETHER THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT A CONVICTION FOR WRONGFUL USE OF COCAINE WHERE THE EXPERT TESTIMONY RELATING TO USE ACKNOWLEDGES THAT INNOCENT INGESTION IS CONSISTENT WITH THE UNDISPUTED NANOGRAM LEVEL OF BENZOYLECGONINE [BE] AND GOVERNMENTAL ATTEMPTS TO REFUTE THIS ARE BASED SOLELY UPON HYPOTHETICAL POSSIBILITIES.

We hold that the evidence presented in this case was as a whole legally sufficient to support appellant's conviction for using cocaine. *See United States v. Ford,* 23 MJ 331, 334–35 (CMA 1987). *See generally United States v. Brown,* 776 F.2d 397, 403 (2d Cir. 1985) (Inferences to support conviction beyond a reasonable doubt need not be "ineluctable."), *cert. denied,* 475 U.S. 1141, 106 S.Ct. 1793, 90 L.Ed.2d 339 (1986).

3. The prosecution in this case called as a witness Mr. Billy Tucker, who testified that he observed appellant appearing to buy rock cocaine on August 3, 1991. He said that he observed appellant receiving a single rock of cocaine from another person for a single bill. He also testified without objection that the seller of the cocaine subsequently told him that appellant bought a rock of cocaine for $20.00.

4. The prosecution also presented evidence that tests performed on appellant's urine on August 14, 1991, were positive for cocaine. Doctor Sweet, accepted as an expert in forensic toxicology, explained the test procedures and results to the court. He testified that appellant's urine sample contained the cocaine metabolite at a level of 1793 nanograms per milliliter. He further testified that such a nanogram count showed

cocaine use "with a very high degree of probability" and was consistent with a single use within the last 24 hours or heavier use at an earlier time.

5. On cross-examination, Doctor Sweet testified that 1793 nanograms of cocaine was also "consistent with unknowing ingestion." The military judge further questioned him about 1793 nanograms being consistent with unknowing ingestion. Doctor Sweet explained what he meant by "consistent with":

It means that it is possible for an individual to be given a small enough dose without their knowledge and with no sufficient physiological or psychological symptoms to be aware that there was some sort of pharmacologically-active drug that had been administered to them and still come up with this value.

On redirect examination, Doctor Sweet agreed "that any time an individual tests positive for BE at 1700 nanograms per milliliter, that every time there's a possibility it is unknowing ingestion."

---

■ 6. Our standard for reviewing cases for legal sufficiency is based on the Supreme Court decision in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *See United States v. Hart,* 25 MJ 143 (CMA 1987). Our general inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact *could* have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2789 (last emphasis added). Such a limited inquiry reflects our intent to "give[ ] full play to *the responsibility of the trier of fact* fairly to resolve conflicts in the testimony, to weight the evidence, *and to draw reasonable inferences* from basic facts to ultimate facts." 25 MJ at 146, *quoting Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis added). We have applied this standard in cases where the prosecution has employed urinalysis results and expert testimony to show prior drug use. *See United States v. Hunt,*

---

* *See* 41 MJ 213, 229 (1994).

33 MJ 345 (CMA 1991); *United States v. Mack*, 33 MJ 251 (CMA 1991); *United States v. Ford*, 23 MJ 331 (CMA 1987); *United States v. Murphy*, 23 MJ 310 (CMA 1987); *United States v. Harper*, 22 MJ 157 (CMA 1986).

7. Appellant asserts that the prosecution presented internally inconsistent evidence of his guilt of wrongfully using cocaine. *See United States v. Mack, supra.* He argues that Doctor Sweet's expert testimony concerning the high probability of cocaine use in this case conflicts with this same doctor's testimony that such a nanogram count is consistent with unknowing ingestion. He further contends that such an inconsistency in the Government's proof was not adequately explained by other evidence in this case. Relying on our decision in *Mack*, he concludes that the prosecution could not rely on a permissive inference of knowledge in this case, so the record was insufficient as a matter of law to support his conviction. We disagree.

■ 8. We initially note that the prosecution in this case was required to show that appellant *knowingly* used cocaine in order to establish a violation of Article 112a. *See United States v. Ford, supra; United States v. Harper*, 22 MJ at 162; para. 37c(5), Part IV, Manual for Courts–Martial, United States, 1984. However, the prosecution was not required to use scientific evidence to show that appellant's ingestion of cocaine was *knowing*, and it did not attempt to do so in the present case. Instead, it relied on a permissive inference of wrongfulness, including knowledge, which can be drawn from proof of presence of the drug's constituent elements in a person's urine. *See United States v. Ford*, 23 MJ at 336; *United States v. Harper, supra* at 162–63.

9. Our decision in *Mack* considered the legal sufficiency of scientific proof to show the predicate for the above-noted permissive inference of knowledge, *i.e.*, proof of drug ingestion. *See United States v. Thompson*, 34 MJ 287 (CMA 1992); *United States v. Boulden*, 29 MJ 44 (CMA 1989). In *Mack*, the record showed that a single sample of the accused's urine tested twice by different lab-

oratories had inconsistent and particularly unexplained results. On the other hand, there was only one laboratory analysis in this case, and the expert testimony was unequivocal that the resulting nanogram count showed ingestion of cocaine. Accordingly, appellant's reliance on *Mack* in his case is neither persuasive nor particularly apt.

■ 10. It is true, however, that Doctor Sweet *on cross-examination* did admit "that 1793 nanograms is also consistent with the possibility of unknown ingestion." Moreover, he explained to the judge that this value on the test could be produced by giving "a small enough dose without their [the user's] knowledge and with no sufficient physiological or psychological symptoms." Thus, appellant asserts that the prosecution should not be allowed to rely on the permissive inference of knowledge where it also introduces evidence purportedly contradicting that inference.

11. We resolved a similar question years ago in *United States v. Ford*, 23 MJ at 336. There, this Court said:

This defense evidence challenges the existence of the fact to be inferred, wrongfulness and, more particularly, knowledge. Our case law has established that testimony by an accused that he did not knowingly use drugs and cannot honestly account for its presence in his body is sufficient to raise an issue of innocent ingestion. *United States v. Grier*, 6 USCMA 218, 19 CMR 344 (1955). While his additional explanation concerning his wife could be considered speculative by the factfinder, *see United States v. Greenwood*, 6 USCMA 209, 19 CMR 335 (1955), it arguably added some weight to his basic denial of knowledge. *See United States v. Hughes*, 5 USCMA 374, 378, 17 CMR 374, 378 (1954). In any event, evidence which contradicts directly or circumstantially the inference to be drawn does not *per se* bar drawing the inference or require that the prosecution introduce evidence that appellant's wife did not secretly plant marijuana in his food. Instead, the prosecution had to persuade the members beyond a reasonable doubt on credibility and probability grounds that this evidence should be disbe-

lieved and the inference should nonetheless be drawn and given such weight to find knowledge beyond a reasonable doubt. *See generally* 30 Am.Jur.2d, *Evidence* §§ 1081, 1083–84 (1967). Accordingly, the evidence is not insufficient on this basis. (Footnote omitted.)

12. Turning to appellant's case, we note that Doctor Sweet's initial testimony did not directly or indirectly contradict an inference of knowing use in this case. His testimony simply established that the laboratory tests conducted did not show knowledge. The record states:

Q: Okay, and you can't tell from the test whether somebody knew they were ingesting cocaine or whether they didn't know.

A: That is correct. That information is not recorded on the molecules.

Moreover, his later testimony that the particular nanogram count in this case could be caused by unknowing ingestion raised only a theoretical possibility of conflict with the inferred fact of knowledge. *See United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994) (Evidence "need not negate all possibilities except guilt."), *cert. denied*, —— U.S. ——, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995). Finally, Mr. Tucker's testimony concerning appellant's apparent purchase of cocaine within the time period of inferred use provided a substantial basis for discounting even that theoretical possibility in appellant's case. Accordingly, we conclude that the showing of such a possibility of unknowing ingestion did not preclude drawing the inference of knowledge in this case or otherwise render this record legally insufficient to support appellant's conviction for drug use. *See also United States v. Jensen*, 41 F.3d 946, 954 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1835, 131 L.Ed.2d 754 (1995); *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir.1994).

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE and WISS concur.