# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

### UNITED STATES

**v.**

### Airman SIERRA L. BLAIR
### United States Air Force

### ACM S32328

### 25 October 2016

Sentence adjudged 21 May 2015 by SPCM convened at Tinker Air Force Base, Oklahoma. Military Judge: Mark W. Milam.

Approved Sentence: Bad-conduct discharge, confinement for 30 days, and reduction to E-1.

Appellate Counsel for Appellant: Major Isaac C. Kennen.

Appellate Counsel for the United States: Lieutenant Colonel Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

DUBRISKE, C. BROWN, and BENNETT
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

BENNETT, Judge:

At a special court-martial composed of a military judge sitting alone, Appellant was found guilty, consistent with her pleas, of one specification of wrongful use of marijuana; four specifications of wrongful possession and one specification of wrongful use of a Schedule II controlled substance (hydrocodone); one specification of failure to go at the prescribed time to her appointed place of duty; one specification of dereliction of duty; and

one specification of making a false official statement.[1]  The military judge sentenced her to a bad conduct discharge, confinement for 30 days, and reduction to Airman Basic (E-1). The convening authority approved the sentence as adjudged.

Appellant now questions the providency of her plea to wrongful possession and use of hydrocodone, and argues that her sentence was inappropriately severe.  Finding no error that materially prejudices a substantial right of Appellant, we affirm the findings and sentence.

*Background*

Appellant was initially assigned to Travis Air Force Base (AFB), California, but received an expedited transfer to Tinker AFB, Oklahoma, to be closer to her family.

While at Tinker AFB, Appellant, a Medical Technician, willfully failed to re-stock examination rooms as it was her duty to do.  She then made a false official statement, telling her supervisor that she had re-stocked the examination rooms.  On one occasion, she overslept and failed to get to her prescribed place of duty on time.  Appellant wrongfully used marijuana on five separate occasions over a span of nine months.  Four of these uses involved smoking marijuana with her boyfriend; the fifth use involved ingesting a marijuana laced gummy bear given to her by her father.  Appellant also wrongfully used and possessed approximately 95 hydrocodone pills.

Additional facts necessary to resolve the assigned errors are included below.

*Providence of Appellant's Plea*

Appellant makes two arguments to support her proposition that her guilty pleas to wrongful possession and use of hydrocodone were improvident.  First, she argues that she should be relieved of criminal responsibility for her possession and use of hydrocodone because she had prescriptions for the medication.  She makes this argument notwithstanding the fact that she obtained these prescriptions through subterfuge and used the medication for something other than its prescribed purpose.

We review a military judge's acceptance of a guilty plea for an abuse of discretion and questions of law arising from the plea de novo.  *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).  We afford significant deference to the military judge's determination that a factual basis exists to support the plea.  *Id.* (citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002)); see also *United States v. Barton*, 60 M.J. 62 (C.A.A.F. 2004).

---

[1] Articles 112a, 92, and 107, UCMJ; 10 U.S.C. §§ 912a, 892, and 907.

The elements of wrongful possession of a controlled substance are: (1) "[t]hat the accused possessed a certain amount of a controlled substance"; and (2) "[t]hat the possession by the accused was wrongful." *Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 37.b.(1) (2012 ed.). The elements of wrongful use of a controlled substance are the same except that the operative verb and noun—"possessed" and "possession"—are instead "used" and "use." *Id.* at b.(2). "'Possess' means to exercise control of something." *Id.* at c.(2). "'Use' means to inject, ingest, inhale, or otherwise introduce into the human body, any controlled substance." *Id.* at b.(10). To be convicted of either possession or use, the accused must be found to have knowingly possessed or used the controlled substance. *Id.* at c.(2) and (10). Also, the possession or use must have been "wrongful," meaning "without legal justification or authorization." *Id.* at c.(5).

It is clear Appellant knowingly possessed and used approximately 95 hydrocodone pills during the charged timeframe, doing so after receiving prescriptions for the medication. The question is whether there was a sufficient legal and factual basis to conclude that Appellant's possession and use were wrongful. For the following reasons, we find that there was a sufficient basis for accepting her guilty pleas to these offenses.

Dr. LC, Appellant's primary care manager at Tinker AFB, initially prescribed hydrocodone for Appellant's legitimate medical problems. The validity of this prescription for hydrocodone was never in dispute. In order to receive her initial prescription from Dr. LC, Appellant had to enter into a pain management agreement. Under the terms of the agreement, she was only to receive hydrocodone from Dr. LC and she was to inform Dr. LC if she received hydrocodone from any other care provider, including those off-base.

After entering into the pain management agreement and getting her initial valid prescription filled, Appellant began to seek medical care and hydrocodone prescriptions at different health-care facilities. When obtaining these additional prescriptions, Appellant intentionally failed to inform each attending physician that she already possessed multiple prescriptions for hydrocodone. Appellant then had these prescriptions filled at different pharmacies.

During her providence inquiry, Appellant admitted that she had become addicted to hydrocodone and started to abuse it.[2] She developed a tolerance to the drug and used it more frequently than she was supposed to. This overuse caused her to run out of the medication more quickly, which is why she sought so many additional prescriptions from multiple physicians.

Appellant received a total of four prescriptions and approximately 95 hydrocodone pills by intentionally misleading her physicians into thinking that she did not already have

---

[2] At trial, the parties stipulated that hydrocodone induces feelings of euphoria, sedation and alters the perception of painful stimuli. It can cause drowsiness, dizziness, nausea, and depressed respiration among other side effects.

an active prescription for the drug. Appellant admitted she did not tell the prescribing physicians that she had existing active prescriptions because she knew they would not have given her a new prescription for hydrocodone knowing that she already had an active one. Appellant admitted she did not have authorization to possess or use these hydrocodone pills, and she pleaded guilty, not only because she hoped to get a lighter sentence, but because she was convinced that she was, in fact, guilty.

Appellant seems to aver the existence of a "prescription defense"—that is, a complete defense to possession and use of hydrocodone because her prescriptions were facially valid, irrespective of her scienter in obtaining the prescriptions. In fact, Appellant claims that our superior court, in *United States v. West*, 34 C.M.R. 449 (C.M.A. 1964), "flatly rejected the idea that there is a scienter exception to the prescription defense." We disagree. With regard to scienter, our superior court opined:

> One who possesses a drug pursuant to a *valid* prescription, or who obtains a narcotic in the performance of duty, is of course relieved of criminal responsibility, regardless of the existence of knowledge of any sort. But if possession is to be deemed innocent when the result of accident or mistake—as the Manual undeniably says it is—*then an issue of knowledge most certainly enters the picture. . . . [T]he foregoing reasoning leads inevitably to the conclusion that the element of scienter is not eliminated* from the crime of wrongful possession of a narcotic drug. . . .

*West*, 34 C.M.R. at 452 (quoting *United States v. Greenwood*, 6 C.M.A. 209 (C.M.A. 1955) (emphasis added). It is clear that our superior court did not reject scienter as an element of wrongful possession of a controlled substance, and the same reasoning equally applies to wrongful use of a controlled substance. When one knowingly misleads a physician into prescribing a controlled substance, that person is aware that their prescription is null and void. A person is not relieved of criminal responsibility if they possess or use a controlled substance pursuant to a prescription when they know that prescription is invalid.

In Appellant's case, her guilty plea is supported not only by the fact that she intentionally misled her physicians to get prescriptions for hydrocodone, but also because she admitted that she did not use the hydrocodone for its prescribed purpose.

> It is well settled law that a valid doctor's prescription provides the authorization or legal justification to possess or use a controlled substance. See *United States v. West*, 15 C.M.A. 3, 34 C.M.R. 449, 452 (C.M.A. 1964); *United States v.*

         ACM S32328

> *Greenwood*, 6 C.M.A. 209, 19 C.M.R. 335 (C.M.A. 1955); *United States v. Bell*, ACM 30813 (A.F. Ct. Crim. App. 14 December 1994). However, a doctor can only prescribe such medication as is required to treat valid medical conditions. In fact, military law has long held controlled substances prescribed by a doctor for invalid purposes will not provide the user or possessor with legal authorization, and those service members are subject to criminal liability. See *United States v. Moore*, 24 C.M.R. 647, 650 (A.F.B.R. 1957); *United States v. Commander*, 39 M.J. 972, 978-79 (A.F.C.M.R. 1994).
>
> . . . .
>
> *Once an individual uses the controlled substance for some purpose other than medical treatment, the use is no longer legally justified or authorized and is wrongful.*

*United States v. Pariso*, 65 M.J. 722, 724 (A.F. Ct. Crim. App. 2007) (emphasis added).

Contrary to Appellant's assertions, *Pariso*, *Moore*, and *Commander* remain good law. Neither this court nor our superior court have issued any decision which can properly be construed to mean that one may obtain a prescription for a controlled substance through subterfuge and then, with "legal justification or authorization," possess and use that controlled substance pursuant to that same prescription. Thus, because Appellant intentionally misled her physicians to procure hydrocodone so she could misuse it, the military judge properly found her guilty of wrongful possession and use of hydrocodone.

Next, Appellant argues that even if her fraud invalidated a prescription, such fraud may not be presumed. But here, the invalidity of the prescriptions was not presumed. "Fraud" was the term used at trial to describe Appellant's means for obtaining her invalid prescriptions for hydrocodone. Appellant, both in her stipulation of fact and through her sworn testimony, unequivocally admitted to knowingly misleading multiple physicians by not informing them that she had an active prescription for hydrocodone. She did this because she believed these physicians would not prescribe her the drug if they knew that she already had an active prescription. Calling this scheme a fraud is permissible, but unnecessary. The record contains an ample predicate for concluding that Appellant intentionally misled her attending physicians to obtain hydrocodone, making her use and possession wrongful.

We find that the four prescriptions for hydrocodone that Appellant obtained by intentionally misleading her physicians were invalid. We also find that Appellant's possession and use of the hydrocodone, pursuant to these same prescriptions, were for a

purpose other than legitimate medical treatment. For these reasons, we find that Appellant's possession and use of hydrocodone were wrongful. There is no substantial basis in the law or fact to question her pleas, and the *Care* inquiry and stipulation of fact clearly support the military judge's acceptance of Appellant's guilty pleas. *See United States v. Care*, 40 C.M.R. 247 (C.M.A. 1983).

*Appropriateness of Appellant's Sentence*

Appellant asserts that her sentence is inappropriate. We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find[] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006); *see also United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982). The purpose of Article 66(c) is to ensure "that justice is done and that the accused gets the punishment he deserves," *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988), based on an individualized consideration of the nature and seriousness of the offense and the character of the offender. *United States v. Snelling*, 14 M.J. 267 (C.M.A. 1982).

Appellant argues that the circumstances surrounding her misconduct demonstrate that she does not deserve a bad-conduct discharge, pointing in particular to significant personal trouble she was experiencing at the time she committed her offenses. Shortly after arriving at Travis AFB, her first duty location, Appellant reported that she had been sexually assaulted, off-base, by a civilian. Following the sexual assault, Appellant was evaluated by the Department of Veterans Affairs for post-traumatic stress disorder (PTSD). She was diagnosed with existing PTSD with major depressive disorder that was permanently worsened as a result of the service-connected sexual assault. Ultimately, the Department of Veterans Affairs assigned her a fifty percent disability evaluation for this condition. Appellant was also evaluated by an Air Force Physical Evaluation Board (PEB) and found to be unfit for duty. During the presentencing hearing, many of the findings of the Department of Veterans Affairs and the PEB were corroborated by the testimony of government witnesses and by Appellant's mother.

While we have a tremendous discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999); *Healy*, 26 M.J. at 395-96. Clemency is an act of mercy that is left to the convening authority and the Secretary of the Air Force—not this Court. *See United States v. Poston*, ACM S29062, unpub. op. at 3-4 (A.F. Ct. Crim. App. 1996) (citing *United States v. Joyner*, 39 M.J. 965 (A.F.C.M.R. 1994).

The maximum authorized sentence for Appellant's crimes was the jurisdictional limit of her special court-martial: reduction to E-1, forfeiture of two-thirds' pay per month for 12 months, confinement for 12 months, and a bad-conduct discharge. Appellant negotiated a pretrial agreement limiting confinement to three months if a bad-conduct discharge was adjudged, and six months if one was not adjudged. The approved sentence of a reduction to E-1, confinement for 30 days and a bad-conduct discharge was well within the discretion of the convening authority. Moreover, we have considered this particular Appellant, the nature and seriousness of her offenses, her record of service, all matters contained in the record of trial, and her arguments on appeal. While sympathetic to Appellant's personal struggles, we conclude that the approved sentence is appropriate.

*Promulgating Order*

Although not alleged as an assignment of error, the initial court-martial order incorrectly states Appellant pleaded not guilty to Additional Charge II. We direct the publication of a new court-martial order to remedy this oversight.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court