UNITED STATES, Appellee

v

ROBERT L. WYNN, Airman Second Class, U. S. Air Force, Appellant

11 USCMA 195, 29 CMR 11

No. 13,278

Decided January 29, 1960

*Lieutenant Colonel Dwight R. Rowland* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel James L. Kilgore.*

*Major Lawrence J. Gross* argued the cause for Appellee, United States. With him on the brief was *Colonel John F. Hannigan.*

HOMER FERGUSON, Judge:

Tried by general court-martial, the accused was found guilty of wrongful use of a narcotic drug, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year. Intermediate appellate authorities affirmed, and we granted review on the issues whether it was error to permit a deponent to testify in part from his notes; whether it was proper for the law officer to permit the same deponent to read his notes as part of his deposition; and whether the law officer erred in his final instructions to the court-martial.

As a result of a tip received from an informer, criminal investigators apprehended the accused and ■ other members of an unofficial military orchestra, engaged in performing at a noncommissioned officers' club in Korea, in the belief that they were using narcotics. A search of the suspects and the area disclosed no evidence to support the informer's allegations, although she apparently pointed out certain individuals, including the accused, as offenders. The men were removed to military police headquarters, advised of their rights under Code, supra, Article 31, 10 USC § 831, and asked to void specimens of urine. These specimens were furnished at various times during the night. Each specimen was placed in a two-ounce bottle, and Agent Moody assumed their custody. Moody later transported the specimens to Japan where they were analyzed in appropriate military laboratory facilities. Analysis of accused's urine disclosed the presence of morphine or a morphine derivative in his body.

Prior to the trial, Agent Moody's oral deposition was taken in view of his impending return to the United States. The deposition related the circumstances surrounding accused's apprehension; the furnishing of the urine specimens; their transmittal to the lab-oratory for examination; and the character of the warning afforded the accused. In discussing the identity of the urine samples obtained, the agent related that he had labeled each bottle used with the date and name, rank, and serial number of the offender giving the specimen. He then pointed out that he had made accurate notes of the times at which each individual had furnished specimens, but that he had no independent recollection of the information contained in the memoranda. However, at another point, he indicated the memoranda served to refresh his memory. The law officer refused to admit in evidence that portion of the agent's notes relating to the accused upon the defense objection that they were prepared for purposes of prosecution. However, he later permitted the notes to be read into evidence as a part of the deponent's testimony. This was also over defense protest. It is the inconsistency in these rulings which forms the basis for the first two issues upon which we granted review.

It is immediately apparent that the law officer's action in sustaining the objection of the accused to ■ the admissibility of the ■ notes presents no controversy reviewable in this Court. Regardless of whether a proper foundation was laid for the receipt of Agent Moody's writings as a memorandum of past recollection recorded, see Manual for Courts-Martial, United States, 1951, paragraph 146a, and United States v Bergen, 6 USCMA 601, 20 CMR 317, the ruling of the law officer upheld the contention of defense counsel and renders the matter moot. Ex parte Steele, 162 Fed 694 (ND Ala) (1908); Bunning v Commonwealth, 177 Ky 155, 197 SW 542 (1917); Pettirgill v Hills, Inc., 199 La 557, 6 So 2d 660 (1942). Moreover, assuming *arguendo* that the law officer's later, apparently inconsistent action in permitting the agent in his deposition to read from the excluded notes was erroneous, it could not have harmed the accused. The record clearly demonstrates that the notes in question related only to the

precise hour at which accused voided a specimen of urine. The fact that the accused furnished a sample following warning of his rights under Code, supra, Article 31, and the custody of that sample, pending its analysis, was independently established by Moody's testimony, based in turn upon his own recollection of the events. The hour at which the specimen was obtained bore on nothing pertinent to the Charge. Accordingly, the reading of the notes could not have affected the findings.

A more important question is presented by the law officer's instructions to the court-martial. *Inter alia*, he advised the members as follows:

"*The prosecution has requested that I give . . . a proposed instruction, which I am giving.*

"The presence of morphine in the urine is *incontestable proof* of administration by eating, smoking or injection. Although its use, when properly prescribed by a physician, or when consumed by accident or mistake, is clearly innocent, the Government is not required to negative the existence of these exceptions in such case. *Such explanation must come from evidence produced on behalf of the accused.*

"*The defense has requested that I give an instruction which I am labeling Appellate Exhibit No. 8 for the the defense:*

"You are advised that if the accused is honestly ignorant as to how the narcotics appeared in his urine, you must find the accused not guilty. Use of narcotics may be presumed wrongful, but if the accused presents evidence proving that he does not know how the narcotics got into his urine, the Government must prove beyond a reasonable doubt that the accused did have knowledge." [Emphasis supplied.]

The prosecution's requested instruction was later reiterated upon inquiry by a court member, although it was modified to include ingestion of narcotics by drinking.

In order to gauge the effect of the foregoing instructions, it is necessary to advert once more to the evidence presented in the record of trial. The prosecution built its case around the results of the testing of accused's urine and the testimony of one who stated her occupation was "Prostitute." She related she observed the accused place powder in a cigarette and smoke it. She was given a similarly prepared cigarette and experienced dizziness when she inhaled. In her opinion, as an admitted user of narcotics, the cigarette contained a habit-forming drug. Accused testified in his own behalf and denied the use of any drugs. He accused the prosecution witness of lying but frankly admitted he was unable to explain the presence of morphine in his body. Other witnesses testified as to his good character and to the effect that the prosecution witness was not, as she claimed, in a position from which she could have observed him smoke. An issue was thus clearly raised concerning the accused's knowing use of narcotics.

In United States v Crawford, 6 USCMA 517, 20 CMR 233, we held an instruction identical to ▮▮▮▮▮ ▮ that given in this case to be erroneous as tending to shift to the accused the burden of proving innocent ingestion of the drug. In that case, however, we found the error was not prejudicial, for the law officer elsewhere in his instructions clearly and unmistakably informed the court-martial that an issue was raised concerning accused's ignorance of fact. He thus squarely placed upon the Government the burden of proving the requisite knowledge. That is not the case here. The defense instruction on ignorance of fact speaks both of the accused's "proving" that he was not aware of the circumstances under which the drug appeared in his urine and the Government's proving beyond reasonable doubt the method by which it came there. Were we considering the question of the sufficiency of that instruction on the issue of ignorance of fact alone, we might be inclined to apply the doctrine of self-induced error. However, we are concerned with an inquiry into whether the advice was sufficient to inform the court-martial be-

yond cavil that the burden of proof was on the prosecution to establish accused's knowing use of the drug. It is clear that it was insufficient for that purpose. United States v Crawford, supra.

Moreover, the instructions are subject to an additional infirmity. It will be noted they informed the members of the court-martial that presence of morphine in the urine is "incontestable" proof of the administration of drugs. Again this comment is taken from a decision of this Court. United States v Ford, 4 USCMA 611, 616, 16 CMR 185. There, however, we were concerned with a question of the sufficiency of the evidence to support accused's conviction for wrongful use of narcotics as against a claim by appellate counsel that the tests used in that case were unreliable. Our remark was based upon the expert testimony adduced in that record of trial. Its utilization as an instruction to the court-martial is tantamount to informing the members they are not at liberty to reject the conclusions of the expert witnesses. Such is, of course, not the law. The opinion of an expert witness is never binding upon the jury. Head v Hargrave, 105 US 45, 26 L ed 1028 (1882) ; Clark v United States, 293 Fed 301 (CA 5th Cir) (1923) ; Obold v Obold, 163 F2d 32 (CA DC Cir) (1947).

Finally, we note that the instructions to the court were identified as having originated with the prosecution or defense. In United States v Shaughnessy, 8 USCMA 416, 24 CMR 226, we pointed out that it was improper so to label the legal propositions delivered to the court. As we said there, at page 421:

" . . . We need hardly say that if the court members are inclined to disbelieve the evidence presented on behalf of the side that requested the instruction, it would also be disinclined to accept the law advanced by that side. . . . "

Under the circumstances, there is a fair risk the court members believed themselves bound by the expert testimony in the case and that it was the duty of the accused to establish the innocent character of the drug he allegedly ingested. Prejudice is apparent and reversal must follow.

While our decision in this case is premised upon the instructional deficiencies, the poor state of the record requires that we comment upon the obvious lack of preparation which characterized the conduct of this trial. Trial counsel attempted to introduce a deposition involving an accused whose case was not being heard; numerous "off the record" conferences were held between counsel, accused, and the law officer; delays were necessary to obtain witnesses; and the record is prepared in such a manner that it is extremely difficult to determine precisely what portions of the deposition were presented to the court-martial. Although the trial involved only six witnesses, most of whom testified briefly, one deposition, and three stipulations, it required two days to complete the hearing. None of these matters constitute harmful error, but they are indicative of the lack of effort on the part of all parties to the trial which eventually led this law officer to give an instruction condemned by this Court in 1955 and which, in turn, causes us to remand the case for a rehearing.

The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Air Force. A rehearing may be ordered.

QUINN, Chief Judge (concurring):

I have substantial doubts about some parts of the principal opinion. For example, the over-all instruction on reasonable doubt is sufficiently like that in the *Crawford* case to justify the same conclusion of the absence of any fair risk of prejudice. However, another fundamental issue is present. In my opinion, while the Criminal Investigations Division agent went through the formalities of informing the accused of his rights under Article 31, he effectively precluded the exercise of the accused's free choice by the manner and

199

the circumstance under which he obtained the urine specimen. I, therefore, join in reversing the findings of guilty.

LATIMER, Judge (dissenting):

I dissent.

Because my brothers do not agree upon a common ground for reversal, no law is announced and a development of my theories would not aid on that score for no two judges are in concert on any important rule. Suffice it to say I do not join with the Chief Judge in his concurring opinion for he appears to rely on some speculative theory which was not the subject of a grant, it was not briefed or argued, and he does not set out any facts or circumstances to support the conclusion he reaches. If he relies on the hypothesis I assume he is advancing, then I must conclude he is not following the doctrine he announced in his concurring opinion in United States v Ball, 6 USCMA 100, 19 CMR 226, where he stated:

" . . . I agree that an accused under Article 31 does not have to be told that he may refuse to provide a particular item of evidence. However, that does not mean he may be asked for a sample of his handwriting or other evidence without even a general warning."

The primary opinion asserts two errors for reversal. The first is that the law officer erred in giving certain instructions requested by both trial and defense counsel. Assuming, without deciding, that the one which delineates the burden of proof announces an incorrect principle of law, it was requested by the accused and he cannot complain on appeal. See United States v Jones, 7 USCMA 623, 23 CMR 87.

The second error relied on by Judge Ferguson to sustain a reversal grows out of the instruction that the presence of morphine in the urine is incontesta-

ble proof of administration by eating, drinking, smoking or injection. I fail to follow his argument that the instruction denied the court members the right to disbelieve the testimony of experts. Nothing whatever cast the slightest doubt on their evidence, and moreover the law officer expressly instructed that, while experts had testified, the members need not give significance to their testimony and made it clear they were at liberty to disbelieve the testimony of any witness. I assume the law officer merely intended to have the court accept a fact about human health known to men of ordinary understanding, namely, that one's body does not manufacture morphine. However, I believe he failed to cover the subject fully and, therefore, the advice he gave was erroneous. Further, it should be axiomatic that any instruction on the incontestability of proof is of doubtful validity and treads on dangerous ground. For illustrative purposes, I point out that in this instance the law officer may have overlooked the possibility that habit-forming drugs can get in the system by snuffing.

While the instruction was erroneous, it was not prejudicial to the accused, and there was a clear waiver of any error by defense counsel. The Government established the presence of morphine in accused's system and his defense was lack of knowledge. No issue was raised concerning the particular means by which the drug got into his body, and the instruction shed no light on any essential element of the crime. There was an out-of-court conference on the subject of instructions, and defense counsel was informed that the instruction was to be given. He specifically stated he had no objection, and when a discussion ensued in open court, he made certain suggestions for broadening it to fit his theory of the case which the law officer adopted. I would, therefore, neither consider this error on appeal nor find it prejudicial.