UNITED STATES, Appellee,

v.

James N. HARPER, Hull Maintenance Technician Fireman Apprentice, U.S. Navy, Appellant.

No. 51257.

NMCM 84–2334.

U.S. Court of Military Appeals.

June 2, 1986.

For Appellant: *Lieutenant J. Cunyon Gordon, JAGC, USN* (argued); *Captain David C. Larson, JAGC, USN,* and *Lieutenant Louis F. Sadler, JAGC, USNR.*

For Appellee: *Captain H. C. Lassiter, USMCR* (argued); *Lieutenant Colonel Stephen S. Mitchell, USMCR, Commander Michael P. Green, JAGC, USN, Lieutenant Steven P. Benson, JAGC, USNR* (on brief); *Captain W.J. Hughes, JAGC, USN.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by a special court-martial composed of a military judge alone at TRIDENT Refit Facility, Bangor, Bremerton, Washington, during December 1983, and January and March, 1984. Contrary to his pleas, he was found guilty of use of disrespectful language, disobedience of a lawful order, three specifications of wrongful use of marihuana, and three specifications of wrongful possession of marihuana, in violation of Article 91, 92, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 891, 892, and 934, respectively. He was sentenced to a bad-conduct discharge, confinement for 45 days, and reduction to pay grade E-1. The convening and supervisory authorities approved the sentence. The Court of Military Review in a *per curiam* decision set aside the three findings of guilty of possession of marihuana on the basis of *United States v. Bullington,* 18 M.J. 164 (C.M.A.1984), and affirmed the remaining findings of guilty and the sentence.

This Court granted review on the following question of law:

> WHETHER AS A MATTER OF LAW EVIDENCE CONSISTING SOLELY OF LABORATORY RESULTS OF URINALYSIS IS SUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT WRONGFUL USE OF MARIHUANA.

We hold that these laboratory results of urinalysis coupled with expert testimony explaining them constituted sufficient evidence to support the military judge's finding beyond a reasonable doubt that appellant used marihuana on three occasions. *See United States v. Wynn,* 11 U.S.C.M.A. 195, 29 C.M.R. 11 (1960), and *United States v. Ford,* 4 U.S.C.M.A. 611, 16 C.M.R. 185 (1954). We also hold that a permissive inference of wrongfulness could be drawn by the military judge on the basis of each

finding of marihuana use. Para. 213*g* (5), Manual for Courts-Martial, United States 1969 (Revised edition) (Change 7). *See United States v. Fears,* 11 U.S.C.M.A. 584, 29 C.M.R. 400 (1960), and *United States v. Crawford,* 6 U.S.C.M.A. 517, 20 C.M.R. 233 (1955). Moreover, despite appellant's testimonial denial and character evidence, we hold that this permissive inference and other evidence presented in this case were sufficient for the military trial judge to find beyond a reasonable doubt that each use of marihuana was wrongful. *United States v. Greenwood,* 6 U.S.C.M.A. 209, 19 C.M.R. 335 (1955), and *United States v. Ford, supra. See United States v. Williams,* 21 M.J. 360, 362 (C.M.A.1986). Finally, we hold that evidence of the presence of the drug coursing through appellant's body while on active duty within his unit was sufficient to show prejudice to the good order and discipline of the armed forces. *See Murray v. Haldeman,* 16 M.J. 74, 80 (C.M.A. 1983).

Appellant was found guilty of wrongful use of marihuana during three separate periods in violation of Article 134. *See* para. 213*g,* Manual, *supra.* The periods were "about May through 8 June 1983," "on or about August through 22 September 1983," and finally, "on or about 22 September through 27 September 1983." The place of use was not alleged, only that appellant was "on active duty, TRIDENT Refit Facility, Naval Submarine Base, Bangor, Bremerton, Washington."

To prove its case on these charges, the prosecution introduced authenticated copies of certain records of the Naval Drug Screening Laboratory at the Naval Hospital, Oakland, California. These records were offered by the prosecution to show that urine samples taken from appellant on various dates tested positive for the presence of a marihuana or cannabinoid metabolite.[1] For each sample tested, there was

---

1. The marihuana metabolite has been succinctly described as follows:

 When an individual inhales or ingests marihuana, it is chemically broken down through normal operation of the body's internal or-

gans. The body breaks down the psychoactive or intoxicating ingredient in marihuana, tetrahydrocannabinol (THC), into several metabolites. The biochemical urinalysis tests that purport to detect marihuana use are de-

an authentication certificate from the above laboratory, a urine sample custody document, laboratory reports including the tests performed, conditions, and results. In addition, the prosecution introduced as evidence copies of pages from the command urinalysis log book which further linked appellant to the urine samples tested by the laboratory.[2]

The prosecution also called several witnesses who identified these documents and explained their meaning. Lieutenant Commander Richard E. Struempler, the head of the Naval Drug Screening Laboratory in Oakland, California, testified concerning the operation of the laboratory, including security, personnel, testing procedures, reporting procedures and receipt and delivery practices. Master at Arms Senior Chief Marvin Parbs, who was the urinalysis coordinator for appellant's command testified concerning the collection of urine samples and their mailing to the laboratory. Doctor Neresh C. Jain, an expert witness in urinalysis, explained the scientific principles involved in the various tests and opined that they indicated the presence of marihuana metabolite in each sample. He also opined that the level of the metabolite in each sample precluded the possibility of passive inhalation.

The defense called Doctor Michael A. Peat as an expert witness in urinalysis. He testified that the large number of samples tested at this laboratory raised questions in his mind concerning security and integrity of samples tested. He further testified that the tests of two samples by radioimmunoassay (RIA) and gas-liquid chromatography (GLC) were not reliable by themselves to show presence of the metabolite. He also opined that the remaining sample tested by mass spectrometry (MS) did not

meet Navy standards for a positive result. He agreed, however, that testing by mass spectrometry was the accepted procedure in the scientific community for determining the presence of the marihuana metabolite.

Appellant took the stand and denied that he knowingly ingested marihuana during the three charged periods. He admitted that he gave urine samples as indicated in the prosecution exhibits by his signature. The defense also called several character witnesses who vouched for appellant's veracity.

In rebuttal, the prosecution recalled the head of the laboratory (LCDR Struempler) to the stand. He testified that after his previous testimony, he retrieved the three urine samples in question. He further stated that he tested all three samples using the mass spectrometer procedure.[3] On the basis of these test results, he opined that the marihuana metabolite was shown to be strongly present in all three samples.

I

*Scope of Review*

The issue granted review asks whether appellant may legally be found guilty of the wrongful use of marihuana solely on the basis of the laboratory results of urinalysis. *See Murray v. Haldeman, supra* at 83 (Fletcher, J., concurring in the result). The granted issue as phrased is somewhat misleading. After reviewing the record, we conclude that the findings of guilty were supported not only by the test results, but also by evidence other than the results of the chemical tests; therefore, we will address the granted issue in this broader light. *See United States v. Ford, supra.*

---

signed to detect the presence of a specific metabolite, 11–nor–delta–9–THC–9–carboxylic acid (THC metabolite), in a urine specimen. Comments, *Admissibility of Biochemical Urinalysis Testing Results for Purpose of Detecting Marihuana Use,* 20 Wake Forest L.Rev. 391 (1984) (footnotes omitted).

2. Defense counsel did not object to the admission of the laboratory results of urinalysis, the urine chain of custody documents, or the pages

from the command urinalysis log. *See* Comments, *supra;* Mil.R.Evid. 103.

3. During trial, defense counsel requested that the urine samples be tested by the defense expert. This request was granted by the military judge. He also granted a request for a continuance to conduct an "[e]xclusionary Blood group/secreter test" in order to show that the urine samples tested were not appellant's.

■ We wish to emphasize at the outset that this Court is not acting as a factfinder in reviewing this evidence. *Cf. United States v. Ellibee,* 13 C.M.R. 416 (A.B.R. 1953). Rather, as an appellate court limited to questions of law, we are assessing the evidence of record for the sole purpose of deciding whether such evidence is legally sufficient to support the findings of guilty previously entered by the military judge and affirmed by the Court of Military Review. *See United States v. Wilson,* 6 M.J. 214 (C.M.A.1979); *United States v. Ford, supra.* In this context, sufficient evidence generally means some legal and competent evidence from which a courtmartial may find or infer beyond a reasonable doubt those facts required by law for conviction. *Id.; see Mortensen v. United States,* 322 U.S. 369, 374, 64 S.Ct. 1037, 1040, 88 L.Ed. 1331 (1944); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). *See generally United States v. DiCupe,* 21 M.J. 440, 441 (C.M.A. 1986).

## II

### Use of Marihuana

The prosecution was required to prove beyond a reasonable doubt that appellant used marihuana during the period of time alleged in each specification. Use of marihuana is not defined in paragraph 213*g* of the Manual, *supra.* However, this Court in construing similar manual provisions concerning the use of drugs has generally described such an act as the "administration" (*United States v. Ford, supra* at 616, 16 C.M.R. at 190); ingestion (*United States v. Crawford, supra* at 520, 20 C.M.R. at 236); or "physical assimilation" (*United States v. Greenwood, supra* at 216, 19 C.M.R. at 342) of the drug into one's body or system. *Cf. Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). Particular forms of this act noted in our cases are smoking, snuffing, eating, drinking, or injecting.

The mere presence of the drug or its constituent elements in the body has not been expressly held by this Court to be a fact sufficient to show use of that drug. Instead, we have additionally relied on expert testimony that the chemical traces of the drug are not naturally produced by the body or any other substance except the drug in question. *United States v. Wynn* and *United States v. Ford,* both *supra.* The same principle applies to marihuana.

■ In the present case the prosecution evidenced the fact that urine samples had been taken from appellant at the end of each of the charged periods. It also evidenced the fact that each sample tested positive for the presence of the metabolite delta–9–THC–9–carboxylic acid. The prosecution then offered expert testimony that this metabolite was not naturally produced by the body. It further evidenced through expert testimony that this metabolite was produced only by the body's reaction or chemical breakdown of tetrahydrocannabinol (THC), the psychoactive or intoxicating ingredient in marihuana. *See generally* Comments, *Admissibility of Biochemical Urinalysis Testing Results for the Purpose of Detecting Marihuana Use,* 20 Wake Forest L.Rev. 391 (1984).

Doctor Peat, the defense expert, did not dispute the basic scientific principles involved in urinalysis. It was his position that the presence of the THC metabolite was not positively shown by the RIA and the GLC tests. He opined that an MS test was required for a positive identification. During trial, the three samples were additionally tested by MS and the positive results were introduced in rebuttal.

■ We hold that a rational factfinder could rely on this evidence to infer beyond a reasonable doubt that appellant used marihuana. *See United States v. Ford, supra. See generally Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Such a factfinder, of course, was free to reject the expert testimony. *See United States v. Wynn, supra.* However, if he chose to believe this testimony, the extensive testing evidenced in this case

both logically and demonstratively supported findings of use.[4]

## III

### *Wrongfulness*

■ The prosecution was also required to prove beyond a reasonable doubt that appellant's use of marihuana on each of the three occasions was wrongful. Para. 213*g*(5), Manual, *supra.* Wrongfulness in this context means the knowing use of marihuana without justification or authorization. *Id.; see generally United States v. Grier,* 6 U.S.C.M.A. 218, 19 C.M.R. 344 (1955); *United States v. Greenwood, supra. See also United States v. West,* 15 U.S.C.M.A. 3, 34 C.M.R. 449 (1964). In the absence of evidence to the contrary, the prosecution may meet this burden by reliance on a permissive inference of wrongfulness which has long been recognized by military law as flowing from proof of the predicate fact of use of a contraband drug. *Id.; United States v. Fears* and *United States v. Crawford,* both *supra.*

Appellant initially suggests that such an inference of wrongfulness flowing from proof of the use of marihuana violates due process. *See Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). He argues that this inference has the effect of relieving the prosecution of its burden of proof on the element of wrongfulness by shifting the burden of persuasion beyond a reasonable doubt to an accused. We disagree.

■ It is quite clear from paragraph 213*g*(5), Manual, *supra,* and our case law that the inference of wrongfulness is a permissive inference or presumption, not a mandatory inference or presumption. *See Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985). It

does not relieve the prosecution of its burden of persuasion because it still requires the prosecution to convince the factfinder that the suggested conclusion of wrongfulness should be inferred based on the predicate facts proven. *Id.; see United States v. Crawford, supra* at 520, 20 C.M.R. at 236.

Appellant nevertheless asserts that paragraph 213*g*(5) questionably shifts the burden of going forward with evidence concerning this element of the offense to an accused. *Cf. United States v. Holloway,* 10 U.S.C.M.A. 595, 598, 28 C.M.R. 161, 164 (1959). Indeed, the Supreme Court has signaled some concern about such a practice where "a mandatory presumption" is invoked. *See Francis v. Franklin, supra* 105 S.Ct. at 1971 n. 3. However, it has approved such a practice where a permissive inference is involved and there is a rational connection between the facts proved and the fact presumed or inferred. *Barnes v. United States,* 412 U.S. 837, 846 n. 11, 93 S.Ct. 2357, 2363 n. 11, 37 L.Ed.2d 380 (1973). *See also Ulster County Court v. Allen,* 442 U.S. 140, 157 n. 16, 99 S.Ct. 2213, 2224 n. 16, 60 L.Ed.2d 777 (1979); *Mullaney v. Wilbur,* 421 U.S. 684, 702–03 n. 31, 95 S.Ct. 1881, 1891–92 n. 31, 44 L.Ed.2d 508 (1975). As indicated earlier, the rational connection between contraband drug use and wrongfulness has been recognized for many years in military law, and we see no reason to reject it today. *United States v. Fears* and *United States v. Crawford,* both *supra.* Marihuana use is no exception. *See United States v. Nabors,* 10 U.S.C.M.A. 27, 27 C.M.R. 101 (1958); *United States v. Alvarez,* 10 U.S.C.M.A. 24, 27 C.M.R. 98 (1958). *See also United States v. Grover,* 10 U.S.C.M.A. 91, 27 C.M.R. 165 (1958); *United States v. Reese,* 5 U.S.C.M.A. 560, 18 C.M.R. 184 (1955); *United States v. Hughes,* 5 U.S.C.M.A. 374, 17 C.M.R. 374 (1954); *United States v. Lampkins,* 4 U.S.C.M.A. 31, 15 C.M.R. 31 (1954).

---

**4.** Federal case law has recognized the sufficiency of laboratory results of urinalysis to show marihuana use in the context of prison disciplinary proceedings and probation proceedings. *See Harmon v. Auger,* 768 F.2d 270 (8th Cir.

1985); *United States v. Penn,* 721 F.2d 762 (11th Cir.1983); *Wykoff v. Resig,* 613 F.Supp. 1504 (D.Ind.1985); *see also Smith v. State,* 250 Ga. 438, 298 S.E.2d 482 (Ga.1983).

Finally, appellant implies that this permissive inference is not sufficient as a matter of law to support a finding of wrongfulness beyond a reasonable doubt in the present case. *See Ulster County Court v. Allen, supra* 442 U.S. at 166–67, 99 S.Ct. at 2229–30; *Barnes v. United States, supra* 412 U.S. at 844–45, 93 S.Ct. at 2362–63. We disagree. Appellant's argument assumes that the prosecution relied solely on this permissive inference to show the element of wrongfulness for these offenses. *Id.; see United States v. Mahan,* 1 M.J. 303 (C.M.A. 1976).

■ As indicated earlier in this opinion, the prosecution introduced sufficient evidence from which a factfinder could find beyond a reasonable doubt that appellant used marihuana. On this basis, the prosecution could also ask the factfinder to infer that the use was wrongful. Para. 213*g* (5), Manual, *supra. See generally McCormick on Evidence* § 344, p. 973 (E. Cleary 3d ed. 1984). To persuade the court to draw this inference, expert testimony was again offered by the prosecution. Doctor Jain testified that the nanogram readings on the three samples ruled out the possibility of passive inhalation. Moreover, he testified that these particular results indicated that the user at sometime experienced the physical and psychological effects of the drug. Finally, the prosecution evidenced the use of marihuana on three separate occasions. Clearly, the repetition of such an act with these recognizable effects suggests appellant knew what he was doing. *See* Mil.R. Evid. 404(b), Manual, *supra;* II Wigmore, *Evidence* § 368 (Chadbourn rev. 1979). In this context we hold there was sufficient *prima facie* evidence presented for the military judge to find beyond a reasonable doubt that appellant knowingly and wrongfully used marihuana.

Appellant denied that he knowingly used marihuana during the three charged periods. He also offered character witnesses who vouched for his veracity. However, he offered no explanation for the presence of the drug in his body other than incorrect tests. He eschewed the defense of passive inhalation and stated that he knew the effects of marihuana and did not experience them during the charged periods. While he did concede the possibility of accidental ingestion as a result of his association with marihuana users, his testimony as a whole discounted this possibility. In this context, the permissive inference of wrongfulness and the other evidence of knowledge were sufficient evidence to prove this element of the offense beyond a reasonable doubt. *See United States v. Greenwood* and *United States v. Ford,* both *supra. See generally Barnes v. United States, supra* 412 U.S. at 845 n. 9, 93 S.Ct. at 2362 n. 9.

## IV

### *Prejudice to Good Order and Discipline*

■ The final requirement of proof for conviction of these offenses was that appellant's use of marihuana be shown to be under circumstances which prejudiced the good order and discipline of the armed forces or which brought discredit upon them.[5] Para. 213*g*, Manual, *supra.* The prosecution evidenced appellant's use of marihuana on three occasions. In doing so, it established that the psychoactive or intoxicating ingredient of marihuana, THC, was in his body while he was on active duty at his command unit. It also offered expert testimony as to what the physiological or psychological effects would be and that at some time appellant would have had to experience these effects. *Cf. Murray v. Haldeman, supra* at 80. Finally, it offered testimony from Lieutenant James R. Cook on the adverse impact drugs have on the command.

Such evidence was sufficient for the military judge to find beyond a reasonable doubt that each use of marihuana was prejudicial to good order and discipline. *See Murray v. Haldeman, supra.* Although it

---

5. Although under Article 112*a,* Uniform Code of Military Justice, 10 U.S.C. § 912*a,* proof of this element is no longer required, the same rationale would apply to testing for service connection. *Murray v. Haldeman,* 16 M.J. 74, 80 (C.M. A.1983).

could not be determined whether appellant was actually experiencing the physiological or psychological effects of marihuana at these times and places, the presence of the chemical in his body at the very least subjected him to these effects. Under *Murray v. Haldeman, supra,* this was enough to show service connection and, in view of the expert testimony in this case, it was sufficient to show prejudice to good order and discipline in the armed forces. *See Schlesinger v. Councilman,* 420 U.S. 738, 760 n. 34, 95 S.Ct. 1300, 1314 n. 34, 43 L.Ed.2d 591 (1975); *see also Murray v. Haldeman, supra* at 80 n. 6.

### Conclusion

 The present case was tried by military judge alone, and we presume that he followed the law in reaching his findings of guilty. *See United States v. Lewis,* 12 M.J. 205, 208 n. 4 (C.M.A. 1982). Where members are the finders of fact, it is incumbent on the military judge to clearly instruct them concerning these principles of law. *See generally United States v. Williams,* 583 F.2d 1194, 1199–1200 (2d Cir.1978), *cert. denied,* 439 U.S. 1117, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979); *United States v. Baller,* 519 F.2d 463, 466–67 (4th Cir.), *cert. denied,* 423 U.S. 1019, 96 S.Ct. 456, 46 L.Ed.2d 391 (1975). The heavy responsibility placed on the factfinders in these types of cases is delineated above and should be clearly conveyed to court members. We are confident that properly informed military factfinders will reach their findings in accordance with the law.

The pernicious effects of drug use on members of our armed forces as well as on the ability of our armed forces to perform its mission cannot be gainsaid. *See* H.Rep. 549, 98th Cong., 1st Sess. 17, 19 (1983), *reprinted in* 1983 U.S. Code Cong. & Ad. News 2177, 2182, 2185; S.Rep. No. 53, 98th Cong., 1st Sess. 11, 29 (1983). However, this Court has stated in the past and repeats today:

> While the stamping out of trafficking in narcotics must receive helpful assistance from military courts, well-established principles concerning criminality should not be discarded for that purpose alone. Particularly is that true in a field where difficulties of proof are readily surmountable.

*United States v. Grier, supra* at 224, 19 C.M.R. at 350. Although we affirm the findings of guilty in this case, we do not hold today that a military accused can be convicted for wrongful marihuana use *solely* on the basis of laboratory results of urinalysis.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT concurs.