**UNITED STATES, Appellee,**

v.

**Stephen M. CORBETT, Master Sergeant, U.S. Air Force, Appellant.**

No. 60,743.
ACM 26667.

U.S. Court of Military Appeals.

Sept. 29, 1989.
Certiorari Denied Nov. 27, 1989.
See 110 S.Ct. 506.

For Appellant: *Colonel Richard F. O'Hair* and *Captain Paul M. Dankovich* (on brief).

For Appellee: *Captain Joseph V. Treanor, III* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief); *Colonel Joe R. Lamport* and *Colonel William T. Hoffman,* USAFR.

*Opinion of the Court*

EVERETT, Chief Judge:

A general court-martial convened at Hurlburt Field, Florida, tried Master Sergeant Corbett for several violations of Article 112a, Uniform Code of Military Justice, 10 USC § 912a, and, contrary to his pleas,

found him guilty as charged.[1] The sentence adjudged was a bad-conduct discharge, confinement for 15 months, and reduction to the lowest enlisted grade. The convening authority approved the sentence; and the Court of Military Review affirmed the findings and sentence in a memorandum opinion. Thereafter, we granted Corbett's petition for review to consider this issue:

WHETHER THE MILITARY JUDGE ERRED BY OVERRULING THE OBJECTION OF THE DEFENSE TO THE TESTIMONY OF SGT NEAL CONCERNING NINE INDIVIDUALS AND WHETHER THEY HAD BEEN COURT–MARTIALED AND CONVICTED, WHICH TESTIMONY WAS ASSERTED TO BE IRRELEVANT AND PREJUDICIAL.

I

The Government's case against Sergeant Corbett rested on the testimony of two of his fellow noncommissioned officers, Sergeants Scott and Neal, both of whom had themselves been detected as drug users through urinalysis. The Office of Special Investigations (OSI) had interviewed them, and the information derived from those interviews had led to the charges against Corbett.

Sergeant Scott testified that he had used cocaine with appellant during 1986; that he had observed appellant use cocaine on April 30, 1987; and that appellant had distributed cocaine to him on one occasion. Sergeant Neal's testimony was that during June 1987, he met appellant at the Elks Club in the local civilian community; that appellant had introduced him to a civilian, "Slim;" and that the trio had obtained cocaine, which they used together. It is Neal's testimony that is the subject of this appeal.

On direct examination, Neal testified that he had used cocaine with Corbett and "Slim" in the latter's apartment and that he had told the OSI about this use during the interview which followed his positive urinalysis. Presumably to soften the potential impeaching effect of the disclosure, trial counsel had Neal admit that in the same statement he had falsely accused another airman, John Wood, of a drug offense.

Cross-examining Neal at length about his statement and his use of cocaine, civilian defense counsel probed the witness' ability to remember the details of his own drug use; adduced the admission that Neal had initially denied using drugs himself; inquired as to how often Neal had used drugs and whether he had fully disclosed the extent of that use to the OSI; and questioned his memory as to the events of the evening when he claimed to have used cocaine with Corbett.

The defense demonstrated that Sergeant Neal had made a statement to the defense team that was somewhat inconsistent with the testimony he had given in court; and Neal conceded that, in his statement to the OSI, he had accused another airman of using drugs when that airman was in confinement on the date in question. Moreover, it was established on cross-examination that Neal had been convicted for his own drug use and was hoping for clemency as a result of his testimony, and that Neal's statement to the OSI had been motivated, at least in part, by his fear of punishment. Finally, defense counsel brought out that Neal did not know the difference between a number of controlled and uncontrolled substances.

Attempting to rehabilitate his witness, trial counsel asked him if one of the other persons named in the statement to the OSI had been tried and convicted. Over defense objection, Neal was allowed to answer that he "believed so." Then—al-

---

1. In three specifications Corbett was charged with wrongfully using cocaine between July 1, 1986, and November 1, 1986; on or about April 30, 1987; and between June 1 and June 30, 1987. He also was charged with distributing

"some amount of cocaine" in July 1986; but at trial the date was changed to October, and he was found guilty on the specification as amended.

though without repetition of the defense objection—the prosecutor proceeded to inquire whether each of nine other servicemembers named in Neal's statement had been convicted of drug use. Neal named six of the airmen who had been convicted and said that he did not know the fate of another one. The remaining airmen on the list were Sergeant Scott, who was the other principal government witness at appellant's trial,[2] and Corbett himself.

Subsequently, there was recross-examination as to whether the convictions about which Sergeant Neal testified had been for offenses disclosed in his statement and whether other evidence besides his testimony had been presented at trial. In one instance, Neal admitted that he did not know if the conviction had been based on his own testimony. Recross-examination also pointed out further inconsistencies between Neal's statement to the OSI and the information he had given the defense team in discovery interviews.

## II

### A

■ Initially, we observe that Sergeant Neal's testimony about the convictions was hearsay. In the first place, it is unclear that he had even been present when the findings of guilty were returned in the trials of the various airmen mentioned in his statement. Secondly, those findings of guilty were only a formal manifestation of an opinion reached by court members or by military judges as to the guilt of the persons being tried; and Corbett's counsel had no opportunity to cross-examine those factfinders as to the basis for their findings.

■ Since the defense failed to raise a hearsay objection as to Neal's testimony, this objection was waived. Mil.R.Evid. 103(a), Manual for Courts–Martial, United States, 1984. However, defense counsel

did object on grounds of relevance, cf. Mil. R.Evid. 401 and 402, and this objection should have been sustained. The circumstance that Sergeant Neal had made accusations to the OSI with respect to several airmen who were later convicted by a court-martial did not establish the truthfulness of his testimony against Corbett. Indeed, even if Neal testified as a government witness at the trial of the other airmen who were found guilty, their convictions did not establish his credibility. Furthermore, such evidence is misleading for the factfinder, confuses the issues, and tends to unfairly prejudice the accused. See Mil.R.Evid. 403.

■ Mil.R.Evid. 404(b) precludes admission of evidence of other misconduct by an accused, unless certain requirements are fulfilled. The premise for this prohibition is that the factfinder may be confused into assuming that, because the accused has been guilty of other crimes in the past, he is guilty of the offense charged. See S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 361 (2d ed. 1986). In a somewhat similar fashion, the testimony of Sergeant Neal invited the court members to infer that, because other airmen had been convicted against whom he had made accusations to the OSI and had testified at their trials, his accusations against Corbett must be true. This type of logic is not permitted in a court-martial.

We realize that, in determining whether probable cause has been established by an unidentified informer's tip, a magistrate will often ask law-enforcement officers about the accuracy of tips they have received from the same informant in the past. However, rules that apply to a probable-cause hearing do not necessarily apply at trial;[3] and the reliability of a witness cannot be demonstrated at trial by proving

---

2. Sergeant Scott had already testified, and during his testimony, it had been made clear that disposition of any charges against him was awaiting the outcome of some of the cases in which he was a witness.

3. For example, compare *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), with *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

that he had been a government witness against other persons who were convicted.

## B

■ Having determined that error occurred, we must now assess its impact on appellant's trial. In this connection, we note that defense counsel, after initially objecting on relevance grounds, did not object again as trial counsel proceeded to ask Sergeant Neal about the convictions of the various airmen mentioned in his statement to the OSI. Moreover, earlier in the trial, Special Agent Ackley, who had been in charge of the OSI investigation, had testified on cross-examination and redirect examination that, despite some discrepancies in the statement made to him by Sergeant Scott, he was convinced of Scott's truthfulness and that, in part, his opinion was based on the fact that all of the airmen named in Scott's statement had been tried and convicted.[4] In light of the defense failure to object to this earlier testimony by Special Agent Ackley or to repeat its initial objection to Sergeant Neal's testimony about the convictions of other airmen, *see* Mil.R.Evid. 103(a)(1), we find it hard to believe that the erroneous overruling of the defense objection affected the outcome of the trial.

Despite the flaws in his character, Sergeant Neal testified in a straightforward, clear, and unwavering manner; and, even defense counsel's able cross-examination did not shake his testimony about his use of cocaine with Corbett. Moreover, appellant had a weak defense with respect to the single specification on which Neal testified. Indeed, Corbett's direct testimony did not specifically address this offense but contained only a blanket statement that he did not use cocaine; and his only direct reference to Sergeant Neal came during cross-examination, when Corbett denied ever having seen Neal at the Elks Club. On the other hand, the defense had gone to great lengths to present an alibi for Corbett's whereabouts with respect to the offenses on which Sergeant Scott testified and had proffered several reasons why Scott might have falsely accused Corbett of criminal activity.

We are convinced that the evidence about the convictions of the other airmen named in Sergeant Neal's statement to the OSI had minimal effect on the court members. Indeed, at one point in the trial, when the president of the court-martial was explaining why he wanted to ask certain questions, he clearly stated that the court members realized that they had to weigh the facts of appellant's case without regard to the fate of any other persons who had been the subject of the same investigation. Moreover, although the court members had many questions about Sergeant Scott's credibility,[5] they did not seem to be troubled about Neal's veracity. Apart from inquiring about Neal's expectation of clemency and about whether Corbett had testified at Neal's trial, the court members did not seek additional evidence as to his credibility.[6]

When we consider all these circumstances, we are convinced that the reception in evidence of Sergeant Neal's testimony about the convictions of the airmen named in his statement was harmless. *Cf. United States v. Weeks*, 20 MJ 22, 25 (CMA 1985) (explaining factors to be considered in de-

4. Defense counsel had asked Special Agent Ackley not only about the discrepancies in Scott's statements but also about remarks of other OSI agents to the effect that Scott had lied to them. On redirect examination, trial counsel was seeking to establish that—despite these discrepancies and adverse comments—Ackley thought Scott was truthful.

5. Exercising their prerogative, the court members asked that Special Agent Ackley, who had supervised the investigation, be recalled to testify concerning Scott's credibility. They also re-quested that other OSI agents who had reservations about Scott's truthfulness be called as witnesses—although the military judge denied this request.

6. The members certainly were not hesitant in asking for evidence about other matters as to which they were uncertain. Indeed, the president of the court-martial, at one point, asked the military judge to have trial counsel restrain his show of irritation at the questions being asked by the court members, and the judge obliged.

termining whether an accused was prejudiced). Indeed, we would come to this conclusion even if we applied the test for constitutional error. *See United States v. Remai,* 19 MJ 229 (CMA 1985).

## III

The decision of the United States Air Force Court of Military Review is affirmed.

Judge SULLIVAN concurs.

COX, Judge (concurring in part and dissenting in part):

I concur in the majority opinion as it states and addresses the granted issue. An informant's "track record" of helping the Government convict other accused is irrelevant and prejudicial to an accused, and may not be allowed before members. That the error was harmless in this case, however, is best demonstrated by the fact that the president of the court-martial actually stated that he and the other members would not consider the fate of other accused. *Cf. United States v. Cordova,* 25 MJ 12 (CMA 1987).

I am troubled, however, by the continued practice of prosecuting servicemembers for drug use based solely upon the testimony of other drug abusers, whose testimony is highly suspect and incredible. *See United States v. Arguello,* 29 MJ 198 (CMA 1989) (Cox, J., concurring in the result).

There was no physical evidence used to convict appellant. Appellant's use of cocaine as alleged between July 1986 and November 1986, and single distribution of cocaine between October 1 and 31, 1986, was proven by the testimony of Sergeant Scott, an admitted, habitual drug abuser who eventually became an informant for the Office of Special Investigations (OSI). The Government could provide no proof that the drug ever existed, but instead offered prosecution exhibits consisting of supposed "crack" cocaine, which did not come from appellant, and paraphernalia "similar" to that used by appellant with Sergeant Scott. Appellant's use of cocaine

in April 1987 was proven by the testimony of Sergeant Scott and OSI Agent Ackley. Agent Ackley gave Sergeant Scott $50.00 so he and appellant could buy "crack" cocaine. Sergeants Scott and Corbett then managed to smoke all the crack, so again there was neither physical evidence nor probable cause for a search of appellant's urine for proof of his cocaine use. Appellant's use of cocaine in June of 1987 was proven only by the testimony of Sergeant Neal, another admitted, habitual drug abuser.

The linchpin of prosecuting drug-related offenses in the military, especially wrongful use, has been the proper admission of scientific evidence of the nature of a controlled substance, particularly urinalysis results. *United States v. Ford,* 23 MJ 331 (CMA 1987); *United States v. Murphy,* 23 MJ 310 (CMA 1987); *United States v. Harper,* 22 MJ 157 (CMA 1986). I am aware that Federal circuits have permitted convictions of possession and distribution without the *corpus delicti* of the drugs, because they were consumed. *United States v. Schrock,* 855 F.2d 327, 332–36 (6th Cir. 1988). A distribution may also be upheld when, although the drugs were not retrieved, the Government provided, similar to this case, the money which was passed to complete the transaction. *See United States v. Nuccio,* 373 F.2d 168, 174 n. 4 (2d Cir.) *cert. denied,* 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623 (1967). In addition, this Court, in years previous to the practice of urinalysis, has allowed prosecution for use of illegal drugs based upon the contemporaneous declaration of a witness claiming that an accused in fact used a substance he asserts, based on personal experience, is an illegal drug. *United States v. Weinstein,* 19 USCMA 29, 41 CMR 29 (1969).

I stand to be corrected, but having authored *United States v. Harper, supra,* and having years of experience at the trial bench adjudicating drug-related offenses, I must voice my grave reservation toward criminal prosecutions for drug use in the military which lack any available scientific

identification that an illegal drug was used.* Prosecutions for such drug use are and ought to be zealous. But convictions which are based on nothing more than the highly-suspect testimony of other drug abusers is, at worst, proof of guilt by association.

I would remand the case to the United States Air Force Court of Military Review to determine if the evidence is sufficient to sustain the conviction.

---

* Why do we bother with "listing" substances on schedules if a drug user is competent to identify the illegal nature of a substance. *See United States v. Reichenbach*, 29 MJ 128 (CMA 1989).

The irony of this type of prosecution is that if the substance being used is seized and it turns out not to contain the active, unlawful ingredient, then no illegal use has occurred.