# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
PENLAND, HAYES, and MORRIS
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Captain ROSS E. DOWNUM**
**United States Army, Appellant**

ARMY 20220575

Headquarters, 1st Cavalry Division
Steven C. Henricks and Scott Z. Hughes, Military Judges
Lieutenant Colonel Shari F. Shugart, Staff Judge Advocate

For Appellant: Captain Matthew S. Fields, JA; Daniel Conway, Esquire (on brief and reply brief).

For Appellee: Colonel Christopher B. Burgess, JA; Major Chase C. Cleveland, JA; Captain Anthony J. Scarpati, JA (on brief).

29 March 2024

------------------------------------------------------------------
SUMMARY DISPOSITION ON RECONSIDERATION
------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

PENLAND, Senior Judge:

This is the proverbial "paper" urinalysis case, but in this case without the paper. Where this results in the evidence being legally and factually insufficient, we grant relief. A panel of officers sitting as a general court-martial convicted appellant of one specification of unlawfully using cocaine, in violation of Article 112a, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 912a. The military judge sentenced him to a reprimand, to forfeit $1000 pay per month for one month, and 30 days restriction.

## BACKGROUND

On 6 February 2024, a panel of this court issued a summary disposition in this case. *United States v. Downum*, ARMY 20220575, 2024 CCA LEXIS 70* (Army Ct. Crim. App. 6 February 2024) (summ. disp.). On 15 February 2024, Appellee filed a

Motion for Reconsideration and a Suggestion for Reconsideration En Banc. The Suggestion for Reconsideration En Banc was not adopted but Appellee's Motion for Reconsideration was granted on 6 March 2024.

## LAW AND DISCUSSION

We review the case under Article 66, UCMJ. Appellant raises multiple assignments of error. One of them, essentially the same as one of appellant's personally raised matters under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), merits discussion and relief.[1]

We review legal sufficiency de novo. *United States v. Brown*, _M.J._, 2024 CCA LEXIS 18 (C.A.A.F. 10 January 2024) (citing *United States v. Wilson*, 76 M.J. 4, 6 (C.A.A.F. 2017; *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011). We review factual sufficiency de novo. *United States v. Scott*, _M.J._ (Army Ct. Crim. App. 14 March 2024). *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002. Additionally, the National Defense Authorization Act for Fiscal Year 2021 amended Article 66(d)(1)(B) regarding our factual sufficiency review reads as follows:

(B) FACTUAL SUFFICIENCY REVIEW

(i) In an appeal of a finding of guilty under subsection (b), the Court of Criminal Appeals may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof.

(ii) After an accused has made such a showing, the Court may weigh the evidence and determine controverted questions of fact subject to –

(1) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

---

[1] Appellant's remaining assigned errors and personally raised matters are moot. Regarding his claim of ineffective assistance of counsel, we note that his attorneys' performance was not deficient.

Considering our disposition of the case, we also need not resolve the claim of unreasonable post-trial delay. However, we are gravely concerned about the excessive time (174 days) it took the government to submit this fundamentally flawed result for appellate review (especially where Article 60a, UCMJ, has eliminated the convening authority's power to correct such an injustice in the field by disapproving the finding of guilty for this offense).

(2) appropriate deference to findings of fact entered into the record by the military judge.

(iii) If, as a result of the review conducted under clause (ii), the court is clearly convinced that the finding of guilty was against the weight of the evidence the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

Pub. L. No. 116-283, § 542(b), 134 Stat. 3611 – 12. The amendment to Article 66(d)(1)(B) applies only to courts-martial where every finding of guilty in the Entry of Judgment is for an offense that occurred on or after 1 January 2021. *Id.* at 3612.

The government called four witnesses, all related to a urinalysis, and rested. The government may use a positive urine test *as part of* its effort to prove illegal drug use, but our superior court has established predictable conditions. The metabolite in question must not occur naturally in the human body; the test must be scientifically reliable; and the test must reliably account for the possibility of innocent ingestion (this is usually addressed with testimony about the significance of the "cutoff" level). *United States v. Campbell*, 50 M.J. 154, 160 (C.A.A.F. 1999). (citing *United States v. Harper*, 22 M.J. 157, 163 (C.M.A. 1986). (*See also* United States v. Green, 55 M.J. 76, 79-81 (C.A.A.F. 2001). Subject to these substantive requirements, proof of a positive urinalysis allows a factfinder to infer a person has knowingly used the substance in question. *Harper*, 22 M.J. at 163. (*See Also*, Military Judges' Benchbook panel instruction for Article 112a: "[Y]ou may infer from the presence of [cocaine] in the accused's urine that the accused knew [he] used [cocaine]." Dep't of Army, PAM 27-9, Legal Services: Military Judges' Benchbook, para. 3a-36a-2 (5 February 2024) [Benchbook]).

In appellant's trial, the government asked its expert, "[W]hat is GC-MS?" The expert answered, "Gas chromatography mass spectrometry....[i]t is the confirmation, the one that looks for the fingerprint of the drug." Beyond this metaphor the expert offered virtually no information about the test itself, whether it is regarded as scientifically sound, and whether it was conducted in accordance with prescribed procedures in this case.[2] The expert did testify the metabolite from the sample exceeded the cutoff level and did not occur naturally in the body, but there was no explanation of the cutoff level's relevance, or any other evidence indicating test controls for the possibility of

---

[2] On the other hand, the chain of custody evidence was very detailed.

innocent ingestion.[3][4] While appellant did not assert the innocent ingestion defense directly, he recalled an odd incident where innocent ingestion was possible and further posited that to the extent any cocaine metabolites were found in his sample, it was not because of his knowing use. By failing to account for the possibility of innocent ingestion, the government failed to prove beyond a reasonable doubt that appellant's alleged use was wrongful.

The government's case also omitted the test results themselves.[5] Instead, the prosecution asked only for the expert's "opinion based off of your review of the results." The expert responded, "It was positive for BZE at 295 nanograms per milliliter." The purpose and requirement for an expert is to *interpret* results, as noted *supra*, not to simply *provide* the results. Notably, this opinion testimony was the only evidence presented to establish appellant used cocaine.[6]

We are unfamiliar with any remotely recent authority supporting the government's contention that an expert opinion alone, devoid of sufficient factual basis, is adequate to prove drug use, let alone wrongful drug use. Our superior court has held expert testimony is required to *explain* the urinalysis results. *Campbell*, 50 M.J. at 159 (citing *United States v. Graham*, 50 M.J. 56, 58-59 (C.A.A.F. 1999). We interpret this to require two things: *test results* and expert opinion to interpret them. This case failed to sufficiently provide the former but included the latter. We recognize "[i]f the Government relies upon test results, it is not precluded from using evidence other than the three-part standard if such evidence can explain, with equivalent persuasiveness, the underlying scientific methodology and the significance of the test results, so as to provide a rational basis for inferring knowing, wrongful use." *United States v. Campbell*, 52 M.J. 386, 388-389 (C.A.A.F. 2000). In appellant's case, the prosecution did not follow the three-part

---

[3] In our experience as practitioners, the cutoff level is used to account for the possibility of innocent ingestion. But our experience is no substitute for expert testimony - this is still something for the government to prove.

[4] The expert's description of the preliminary screening test was equally lacking.

[5] Government counsel did not offer Prosecution Exhibit 8 for identification, which was the positive test. Apparently, this was not an oversight, as the trial counsel had previously informed the court that he would not be offering that exhibit on page 302 of the Record of Trial.

[6] While unobjected to testimony may be considered substantively, it is not hard to surmise why appellant would not have objected to the test results being introduced through the expert's opinion. An objection would have alerted the government to a potential deficiency of proof.

standard or an equally persuasive method. Without the admission of the test results, commonly accomplished by offering them as non-testimonial business records under Mil. Rule Evid. 803(6),[7] the expert's testimony lacked relevance. Beyond her stating a ng/ml level, there were no facts in evidence for her to explain, and no test results for her to interpret.

For these reasons, and after reviewing all the evidence, we conclude the finding of guilty was legally and factually insufficient.[8]

## CONCLUSION

The finding of guilty and the sentence are SET ASIDE. The charge and its specification are DISMISSED with prejudice.

Judge HAYES and Judge MORRIS concur.

FOR THE COURT:

⟨JAMES W. HERRING, JR.
Clerk of Court

---

[7] But see, *United States v. McGee*, ARMY20190844, 2022 CCA LEXIS 160, at *9 (Army Ct. Crim. App. 17 March 2022) (Mem. op.), distinguishing between laboratory results, which are not testimonial hearsay, and accompanying analysts' certifications, which are. We do not mean to suggest the introduction of the test results in documentary form is the *only* method of proving use, only that the expert opinion must rely on a sufficient factual basis beyond the mere recitation of a ng/ml level.

[8] The defense case did not include enough information to (unwittingly) make the case legally and factually sufficient. We have considered *United States v. Pleasant*, 71 M.J. 709 (Army Ct. Crim. App. 2012) (an appellant's testimony can be sufficiently incredible to incriminate him).