CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA[1], SALUSSOLIA, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Captain JACK K. NORRIS**
**United States Army, Appellant**

ARMY 20160262

Headquarters, III Corps and Fort Hood
Douglas Watkins and Rebecca Connally, Military Judges
Lieutenant Colonel Travis L. Rogers, Staff Judge Advocate

For Appellant: Zachary Spilman, Esquire (argued)[2]; Captain Cody Cheek, JA; Richard W. Rousseau, Esquire; Zachary Spilman, Esquire (on brief and reply brief).

For Appellee: Captain Sandra L. Ahinga (argued)[3];Lieutenant Colonel Eric K. Stafford, JA; Captain Austin L. Fenwick, JA; Captain KJ Harris, JA; Captain Joshua B. Banister, JA; Captain Sandra L. Ahinga, JA (on brief).

14 September 2018

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

We hold, under the unique facts of this case, appellant's act of lying his body on top of his victim is sufficient force to sustain a conviction to the offense of rape by force under Article 120(a)(1), Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920 (2006). We also find the military judge erred, in part, by allowing the government to admit evidence under Military Rule of Evidence [Mil. R. Evid.] 404(b) to establish appellant's intent to dominate and control his victim and his

---

[1] Senior Judge Campanella decided this case prior to her departure from the Court.
[2] Corrected
[3] Corrected

motive of hostility towards his victim. We, nevertheless find this error did not materially prejudice appellant's rights.

A military judge, sitting as a general-court-martial convicted appellant, contrary to his pleas, of two specifications of rape by force, two specifications of sexual assault, one specification of simple assault, and three specifications of assault consummated by a battery, in violation of Articles 120 and 128, UCMJ, 10 U.S.C. §§ 920 (2006), and 920 and 928 (2012). The military judge sentenced appellant to confinement for seventeen years and a dismissal. The military judge granted appellant seven days of Article 13, UCMJ, confinement credit. The convening authority approved the adjudged sentence and credited appellant with seven days against his sentence to confinement in accordance with the military judge's ruling.

This case is before us for review pursuant to Article 66, UCMJ. Appellant asserts eight assignments of error, three of which merit discussion, but no relief.

## BACKGROUND

Appellant's offenses were against his then-wife, JC. Appellant was convicted of two specifications of raping JC by lying on top of her with his body, sufficient that she could not avoid or escape the sexual contact. Appellant raped JC on divers occasions between 1 November 2011 and 31 December 2011 (Specification 2 of Charge I) and on one occasion between 25 March 2012 and 15 April 2012 (Specification 3 of Charge I).

*Rape by Force Offenses*

As to the rape in Specification 2 of Charge I, appellant and JC met in August 2011 and married a month later. Around November or December 2011, JC awoke several mornings with a sore vagina and her clothes removed or improperly located on her body. She also noticed the presence of semen when she used the bathroom.

When JC confronted appellant about what was happening, he admitted to having sexual intercourse with her while she was asleep. During this time, JC was taking prescription Ambien before going to bed, which she testified made her "sleepy and drowsy." JC communicated to appellant that she felt humiliated, violated, and she did not consent to him having sexual intercourse with her while she was asleep and under the influence of Ambien.

After this discussion with appellant, JC testified to awakening on more than one occasion while "very groggy" to find appellant engaging in sexual intercourse with her. JC stated she would start to cry. JC described the occasions as:

> I could just feel, he is a really big guy, and he was a lot bigger than me. At that time he was very muscular and he worked out, so you could definitely feel the weight. And I remember feeling him moving my

clothing. I remember feeling his weight on my chest and on my hips, and then I felt him put his penis into my vagina.

When asked if she could move, JC testified:

No, absolutely not. You are groggy, and he is so much bigger than I am. It is not like you can wake up, you know, and roll over or even push someone off. You can't push—you can't push anything bigger than you off of you.

As to the rape in Specification 3 of Charge I, JC testified to being approximately four months pregnant and returning home after her first ultrasound. JC stated appellant entered their bedroom, grabbed her shoulders, threw her on her back on the bed, pulled down her pants, climbed on top of her, and proceeded to have sexual intercourse with her. JC testified that while appellant was on top of her, his arms were positioned at her sides, and she felt like she could not move because he was so heavy. JC testified she cried during the sexual intercourse because it was very painful.

*Admission of Appellant's Uncharged Acts*

At trial, the government admitted the following Mil R. Evid. 404(b) evidence: (1) appellant drove erratically on two occasions; (2) appellant choked JC and placed a pillow over her face during sexual intercourse on several occasions; and (3) appellant dominated JC in other various ways to include taking her personal items during their entire marriage. *See* Mil. R. Evid. 404(b).[4]

*Appellant's Erratic Driving on Two Occasions*

After JC's first ultrasound, appellant drove her home. They began arguing during the car ride. Becoming more angry, appellant stomped on the accelerator increasing the car's speed to approximately ninety miles per hour on a busy road. Appellant also swerved the car causing JC to hit her head on the side of the car. This driving incident immediately preceded the rape by force offense charged in Specification 3 of Charge I.

---

[4] "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . ." Mil R. Evid. 404(b).

JC testified that on 27 May 2013, she and appellant visited a planetarium with their infant daughter. Their daughter was in the back of the vehicle in a car seat. JC and appellant started arguing during the drive home. Appellant drove fast and erratically, running red lights, and swerving in and out of lanes.[5]

*Appellant's Uncharged Acts Involving Sexual Intercourse with JC*

JC testified on one occasion, appellant entered their bedroom to engage in sexual intercourse. JC told appellant she was too tired. Appellant placed his forearm over her throat, leaned forward, and asked her if "[she] would like to go to sleep forever." JC perceived this as a threat that appellant would use more force against her if she refused to engage in sexual intercourse. JC also testified to other instances during their marriage when appellant would strangle her or place a pillow over her face during sexual intercourse.[6]

*Appellant's Multiple and Varied Uncharged Acts against JC*

JC testified appellant would take her car keys, cell phone, credit card, military identification card, wallet, her engagement ring, and other items of value throughout the course of their marriage.[7] She testified appellant put a "find my i-Phone" application on her cell phone in order to track her whereabouts. Appellant deprived her of sleep by not allowing her to go to sleep or waking her while she was sleeping. JC testified if she offered an opinion contrary to appellant, he would force her to sit on the couch so he could "pontificate for hours if necessary until [JC] said [to him] 'you're right. I'm sorry.'" Appellant also frequently did not allow JC to leave their house or if she left the house he would lock her out.

---

[5] This driving incident occurred the afternoon before the charged offense of child neglect, to which appellant was found not guilty, for leaving his infant daughter unattended in his quarters for over six hours.

[6] Although JC testified to multiple strangulations, appellant was charged with only one specification of aggravated assault for strangling JC and found guilty of the lesser included-offense of assault consummated by a battery (Specification 2 of Charge III).

[7] As to the cell phone, JC testified to one incident on or about 4 August 2013 when she argued with appellant about him turning off her phone. In the middle of the argument, appellant unlawfully pushed JC's head on the ground resulting in a conviction for an assault consummated by a battery (Specification 3 of Charge III).

The military judge ruled orally that all of the uncharged acts were admissible for the non-propensity purpose of establishing appellant's intent to dominate and control JC and his motive of hostility towards her. The military judge reasoned appellant's uncharged acts were relevant because the acts made it more likely than not that appellant possessed the intent or motive to commit the multiple charged offenses of rape, sexual assault, and assault against JC.[8] The military judge also held "the fact that the uncharged acts and the charged acts have the same alleged victim, at the time, which was the accused's spouse at the time, strengthens the mode of relevancy." Although the military judge stated she "considered all three parts" of the Mil. R. Evid. 404(b) test and "under the [*Reynolds*] three part test, this evidence [met] the criteria for admission to show the accused's motive, intent, or state of mind," she did not articulate her Mil. R. Evid. 403 balancing analysis on the record.[9]

## LAW AND DISCUSSION

*Legal and Factual Sufficiency of the Rape Offenses*

Appellant asserts the act of lying on top of another does not constitute sufficient force to affirm his conviction to two specifications of forcible rape under of Article 120(a)(1)(2006), UCMJ. We disagree.

We review claims of legal and factual insufficiency *de novo*, examining all of the evidence properly admitted at trial. Art. 66(c), UCMJ; *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007). The test for legal sufficiency is whether, considering the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the contested crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The test for

---

[8] At the time of the military judge's ruling, appellant was charged with one specification of sexually assaulting JC while she was substantially incapacitated, in violation of Article 120, UCMJ (found not guilty); two specifications of forcible rape of JC, in violation of Article 120, UCMJ (found guilty of both specifications); three specifications of sexual assault by causing bodily harm to JC, in violation of Article 120, UCMJ (found guilty of two of the three specifications); two specifications of aggravated assault against JC, in violation of Article 128, UCMJ (found guilty of the lesser included offense of assault consummated by battery for both specifications); and three specifications of assault consummated by battery against JC, in violation of Article 128, UCMJ (found guilty of two of the three specifications).

[9] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Mil. R. Evid. 403.

factual sufficiency is whether after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

We find JC's testimony, regarding the rapes by force in Specifications 2 and 3 of Charge I, describes "physical violence, strength, power or restraint sufficient that [she] could not avoid [appellant] or escape the sexual conduct." *See* 10 U.S.C. § 920(t)(5)(C)(2006), Article 120(t)(5)(C)*MCM* (2008 ed.), Part IV, ¶45a(t)(5). Appellant cites to *United States v. Soto*, 2014 CCA LEXIS 681 (A.F. Ct. Crim. App. 17 Sep. 2014) and *United States v. Valentin*, 2012 CCA LEXIS 180 (N.M. Ct. Crim. App. 17 May 2012) for the proposition that lying on top of another does not constitute force under 10 U.S.C. § 920(t)(5)(C)(2006). This case, however, is readily distinguishable from *Soto* and *Valentin*. We discuss these distinctions in turn.

In *Soto*, the evidence of force was much weaker than in this case in three ways. 2014 CCA LEXIS 681. First, the government failed to present detailed evidence regarding the victim's communication of non-consent to Soto. *Id.* at *12-13. In contrast, evidence of JC's non-consent is sufficiently detailed. For Specification 2 of Charge I, JC testified she told appellant she felt humiliated, violated, and she did not consent to having sexual intercourse while asleep on Ambien. For Specification 3 of Charge I, JC described appellant's hostility towards her during the car ride home from her first ultrasound when appellant started driving erratically, which caused her to hit her head in the car. When they returned home, despite JC separating herself from appellant, he sought her out in their bedroom, forced her on the bed, forcibly removed her clothes, and proceeded to have sexual intercourse with her. JC cried during the rape because she was in pain. As to both specifications, we find the evidence of JC's non-consent much more compelling than in *Soto* and are convinced beyond a reasonable doubt she did not consent.

Second, in *Soto*, the government presented ambiguous evidence regarding when and for how long Soto was on top of her. *Id.* at *13-14. Whereas, JC's testimony to both offenses provided graphic detail of appellant's force. During the rape in Specification 2 of Charge I, JC testified appellant was physically much bigger than she. She described feeling his weight on her chest and hips holding her down preventing her from moving, rolling over, or pushing him off of her. JC also testified appellant penetrated her while she was "groggy" from Ambien usage which further impaired her physical ability to resist appellant. Similarly, JC testified during the rape in Specification 3 of Charge I she could not move because he was heavy, she was four months pregnant, and the intercourse was painful. We find the evidence of appellant's physical force in both offenses not only much more detailed than in *Soto* but also sufficient to support the conviction.

Third, the victim in *Soto* testified she was afraid during the encounter because she feared getting in trouble for having sex with her instructor and cheating on her boyfriend, not that she was afraid of Soto. *Id.* at *13. In stark contrast, appellant was convicted of physically assaulting JC on multiple occasions during the period surrounding the charged rapes. JC described being afraid of appellant and trapped in the marriage. The record clearly demonstrates JC feared appellant and that fear was present during the rapes for which he was convicted.

*Valentin* is distinguishable because it involved proof of constructive force. 2012 CCA LEXIS 180. Here, it is the amount of actual force that is at issue. In *Valentin*, the court held the military judge erred by instructing the panel members that constructive force under a parental psychological compulsion theory was sufficient to meet the definition of rape by force under 10 U.S.C. § 920(t)(5)(C)(2006). *Id.* at *30. To constitute a rape by force, however, there must be a physical act. *Id.* at *32. Although the government presented evidence of appellant's hostility towards JC and how it influenced her psychologically, in contrast to *Valentin*, the government also presented evidence of actual physical force through appellant's use of his greater body weight to restrain JC. Here, JC testified to the actual physical acts which constituted the force for the rapes in Specifications 2 and 3 of Charge I.

We find appellant's physical acts in Specifications 2 and 3 of Charge I constituted sufficient force to overcome JC. Accordingly, we find there was sufficient evidence for the trier of fact and us to conclude beyond a reasonable doubt appellant raped JC using unlawful force.[10]

---

[10] We further note even if we were to find the facts of this case did not support a factual finding of force, we could still approve a conviction for the lesser included offense of aggravated sexual assault. *See United States v. Alston*, 69 M.J. 214 (C.A.A.F. 2010). In *Alston*, the CAAF held "[t]he bodily harm element of aggravated sexual assault under Article 120(c) – defined in Article 120(t)(8) to include an offensive touching, however slight – is a subset of the force of rape under Article 120(a), as defined in Article 120(t)(5)(C)." *Id.* at 216. We also note a reassessment of the sentence in accordance with the principles of *Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986) would yield the same sentence. We are confident the military judge would have adjudged the same sentence. The maximum punishment for aggravated sexual assault is a dishonorable discharge, forfeiture of all pay and allowances, and confinement for 30 years. *MCM*, 2008, pt. IV, ¶ 45.e(2)(f)(2). Thus, appellant's conviction for Specifications 2 and 3 of Charge I still would have carried a maximum punishment of 60 years. Further, the gravamen of appellant's criminal conduct would remain substantially the same.

7

*Mil. R. Evid. 404(b) Evidence*

Appellant asserts the military judge erred in admitting evidence pursuant to Mil R. Evid. 404(b) to prove appellant's intent to dominate and control JC and his motive of hostility towards JC.

A decision to admit evidence is reviewed for abuse of discretion. *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F. 2003). "[A] military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995).

The test for admissibility of uncharged misconduct under Mil. R. Evid. 404(b) is set out in *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989): (1) Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?; (2) What "fact...of consequence" is made "more" or "less probable" by the existence of this evidence?; and (3) Is the "probative value... substantially outweighed by the danger of unfair prejudice?" *Id.* at 109. In order for evidence to be relevant under Mil. R. Evid. 404(b), the evidence must be probative of a material issue other than character. *Huddleston v. United States*, 485 U.S. 681, 686 (1988).

Ordinarily, under the third prong of the *Reynolds'* test, we review a military judge's Mil. R. Evid. 403 ruling for a "clear abuse of discretion." *United States v. Ruppel*, 49 M.J. 247, 250 (1998). However, we give military judges less deference if they fail to articulate their balancing analysis on the record, and no deference if they fail to conduct a Mil. R. Evid. 403 balancing analysis altogether. *See United States v. Ediger,* 68 M.J. 243, 248 (C.A.A.F. 2010)*; United States v. Berry,* 61 M.J. 91, 96 (C.A.A.F. 2005)*; United States v. Mann*, 54 M.J. 164 (C.A.A.F. 2000). Our superior court has identified a non-exhaustive list of factors to consider when conducting a Mil. R. Evid. 403 balancing test: "[S]trength of proof of prior act— conviction versus gossip; probative weight of evidence; potential for less prejudicial evidence; distraction of factfinder; . . . time needed for proof of prior conduct[;] . . . temporal proximity; frequency of the acts; presence or lack of intervening circumstances; and relationship between the parties." *United States v. Wright*, 53 M.J. 476, 482-83 (C.A.A.F. 2003) (citations omitted).

In analyzing the first prong of the *Reynolds* test, JC's testimony describing each uncharged act, reasonably supports a finding appellant committed each prior act. As to the second and third prongs of the *Reynolds* test, the military judge stated she conducted a Mil. R. Evid. 403 balancing test but failed to articulate her analysis on the record. Accordingly, the military judge's ruling is not entitled to a "clear

abuse of discretion" but instead we will apply a lesser deference for failing to articulate her analysis. Even after applying this lesser deference, we find the military judge did not err in admitting some uncharged acts but erred in admitting other uncharged acts. We discuss each in turn.

*Uncharged Acts Properly Admitted by the Military Judge*

We find the military judge did not err in admitting the uncharged acts of appellant driving erratically after JC's ultrasound, strangling or placing a pillow over JC's face during sexual intercourse, and taking JC's cellphone on one occasion.[11]

*Appellant's Erratic Driving after the Ultrasound*

The uncharged act of appellant driving erratically after JC's first ultrasound is highly relevant to the forcible rape charged in Specification 3 of Charge I because it occurred immediately prior, and is considered *res gestae* evidence. *See e.g. United States v. Moran*, 65 M.J. 178, 183 (C.A.A.F. 2007) (noting otherwise disallowed testimony is permitted because it is necessary to complete the chronological sequence of events).

Appellant and JC had an argument during the drive home, appellant began driving erratically, causing JC to hit her head on the window. JC testified when they returned home, appellant continued to be angry, entered their bedroom and forcibly raped her. We find the military judge properly allowed evidence of appellant's erratic driving on this one occasion because it is relevant to show appellant's intent to dominate and control JC and his motive of hostility towards her which remained present during the rape in Specification 3 of Charge I. *See United States v. Watkins*, 21 M.J. 224, 227 (C.M.A. 1986) (holding prior acts are admissible which reasonably could be viewed as "the expression and effect of the existing internal emotion" and "the same motive [is] shown to have existed in appellant at the time of the subsequently charged acts.").

Under Mil R. Evid. 403, appellant's erratic driving is highly probative because it immediately precedes the charged act in Specification 3 of Charge I and lends explanation to appellant's hostility towards JC during the charged rape. The prejudice of admitting the uncharged acts that appellant drove erratically and committed an assault and battery against JC when her head hit the car window does not substantially outweigh the probative value of the evidence. Admitting the uncharged act is not substantially outweighed by any Mil. R. Evid 403 concerns;

---

[11] We would find these uncharged acts were properly admitted even if we gave no deference to the military judge's ruling.

particularly in a case where an appellant is charged with a plethora of far more serious offenses against the same victim.

*Appellant's Uncharged Acts Involving Sexual Intercourse with* JC

JC testified appellant placed his forearm over JC's neck prior to sexual intercourse and threatened her and on several occasions throughout the marriage appellant strangled her or placed a pillow over her face during sexual intercourse. These uncharged acts are highly relevant to show appellant's intent to dominate and control JC and his motive of hostility towards her. Appellant was charged with several crimes of sexual violence against JC. The aforementioned uncharged acts are similarly violent acts to the charged sexual offenses. Additionally, the uncharged acts occurred on divers occasions within the same time period as the charged offenses.

*United States v. Jenkins*, presented a similar Mil. R. Evid. 403 analysis as occurred in this case. 48 M.J. 594 (1998). Similar to appellant's assaults against JC, Jenkins also had a "long sordid history of battering his spouse." *Id*. at 595. In *Jenkins*, this court held the military judge correctly applied the three-part *Reynolds* test and properly admitted the evidence of uncharged acts "given the repetition of very similar circumstances on five occasions, always between Jenkins and [his wife], always involving matters beyond the control of [Jenkins], matters which led to an argument and a lashing out, and often times to injury to [his spouse]." *Id*. at 598. Similar to *Jenkins*, appellant's uncharged acts were all similar acts of repeated violence and always against his wife.

While some prejudice exists in admitting uncharged acts of appellant's additional violence against JC, the uncharged acts are highly relevant as to appellant's hostility towards JC. *See Jenkins*, 48 M.J. at 598-99 (Army Ct. Crim. App. 1998); *see also United States v. Hamilton*, 2001 CCA LEXIS 451 at *25 (Army Ct. Crim. App. 2001) (reversing because of erroneously admitted Mil. R. Evid. 404(b) evidence but recognizing the relevancy of motive is strengthened when the charged and uncharged acts occur against the same victim).[12] Accordingly, we find the probative value of this evidence not substantially outweighed by any Mil. R. Evid 403 concerns.

*Appellant's Control over JC's Cell Phone*

---

[12] Appellant asserts his case is similar to *Hamilton* and requires reversal. Appellant's case, however, is readily distinguishable from *Hamilton* because the uncharged acts in *Hamilton* were committed against a different victim, an ex-wife, and the acts were far more serious crimes than the charged offenses against his current wife. *Id*. at *18-19.

JC testified that on 4 August 2013, she and appellant argued over her cell phone because he had turned it off, which was a common occurrence in their marriage. This angered JC because it was her phone and appellant never paid for her phone. She confronted appellant about turning off her phone, which resulted in an argument. During the argument, appellant pushed JC's head into the ground. Appellant was charged with this assault of JC in Specification 3 of Charge III, and convicted of this offense.

Under Mil R. Evid. 403, the probative value of appellant's prior act of turning off JC's cell phone on 4 August 2013 is highly relevant because it provides context to the argument immediately preceding the assault in Specification 3 of Charge III and the probative value of the evidence is not substantially outweighed by any Mil. R. Evid 403 concerns.

*Relevance of Appellant's Motive and Intent*

We next address appellant's argument that the evidence of his intent and motive were not relevant because appellant's defense at trial was JC fabricated the charged offenses and thus he did not assert his acts were an accident or he possessed an innocent mental state. Appellant asserts his intent was therefore not in controversy. We disagree for two reasons.

First, appellant's defense theory did not relieve the government of the burden of establishing beyond a reasonable doubt that appellant possessed the general intent to commit the offenses against JC. *See United States v. Harrow*, 65 M.J. 190 (C.A.A.F.). "[T]he basic tenet from the Supreme Court is '[a] simple plea of not guilty . . . puts the prosecution to its proof as to all elements of the crime charged.'" *United States v. Harrow*, 65 M.J. 190 (C.A.A.F. 2007) (quoting *Mathews v. United States*, 485 U.S. 58, 64-65 (1988)). "The Supreme Court, examining this same question, unequivocally determined that evidence of intent and lack of accident may be admitted regardless of whether a defendant argues lack of intent because every element of a crime must be proven by the prosecution." *Id*. at 202 (citing *Estelle v. McGuire*, 502 U.S. 62, 69 (1991); *Matthews v. United States*, 485 U.S. 58, 64-65 (1988)). "Motive is the moving force that induces the criminal act and comes into play before the actus reus, that is, why the criminal did the act." *United States v. Jenkins*, 48 M.J. 594, 598 (Army Ct. Crim. App. 1998) (citation omitted). "[A]lthough never an element of an offense, [motive] may be relevant in a case to . . . to show criminal intent." *United States v. Hamilton*, 2001 CCA LEXIS 451, at *25 (Army Ct. Crim. App. 2001). "Uncharged misconduct can be probative of general criminal intent, such as that required of rape […]." *U.S. v. Jenkins*, 48 M.J. 594, 599 (Army Ct. Crim. App. 1998).

Second, appellant's defense was JC fabricated the charged offenses, which ultimately creates an inverse presumption regarding appellant and that he did not

possess any motive or intent to harm JC. However, if appellant possessed an intent to dominate and control JC and a motive of hostility towards her, the government could establish it was less likely JC was fabricating the allegations. In other words, appellant's motive and intent were relevant to rebut the defense theory that JC was lying. During cross-examination of JC at trial, defense attempted to undermine JC's credibility, on multiple grounds, to include insinuating JC actually had a happy and loving marriage with appellant. Defense counsel cross-examined JC extensively with multiple pictures of her and appellant appearing happy. This cross-examination increased the relevance of appellant's motive and intent against JC, allowing the government to rebut the defense theory that JC and appellant had a happy marriage so JC must be lying about the alleged offenses.

While the government may not have been required to prove appellant's "specific intent" as an element, we find the government should not be constrained from presenting relevant acts regarding appellant's specific intent as evidence to establish the element of appellant's general intent. We also find the defense's theory of the case and cross-examination of JC created an inverse presumption that appellant possessed no criminal intent or motive, which placed his intent and motive into controversy and made the uncharged acts relevant to the government's case.

*Uncharged Acts Improperly Admitted by the Military Judge*

We find the military judge erred in admitting the uncharged acts of appellant driving erratically after a family visit to the planetarium and the other multiple and varied acts against JC.

The uncharged act of appellant driving erratically after a family visit to the planetarium, appears to had minimal, if any, relevance to any of the charged offenses related to JC. JC testified she and appellant argued during the drive home. JC testified appellant stomped on the accelerator, ran a couple of red lights, and was driving erratically by swerving in and out of lanes. When they returned home, they continued to argue, eventually leading to JC leaving the house without their infant daughter. Appellant was charged with child endangerment for leaving their daughter unattended for over 6 hours in her crib. Appellant's hostility towards JC, by driving erratically, however, lacks sufficient relevance as to appellant's alleged neglect towards their daughter. Even if the evidence had some relevance the probative value was substantially outweighed by Mil. R. Evid. 403 concerns. We find this incident of appellant's erratic driving too attenuated from the charged offenses regarding JC for its admission under Mil. R. Evid. 404(b).

With the exception of appellant shutting off JC's cell phone on or about 4 August 2013, the other uncharged acts of appellant taking JC's other personal items, depriving JC of sleep, forcing her to sit on the couch, and not allowing her to leave the house or locking her out of the house had minimal, if any, relevance under Mil

R. Evid. 404(b) as to appellant's intent or motive to commit the charged offenses. We find these uncharged acts had minimal, if any, relevance to the charged offenses because they were too attenuated in time to any actual alleged offense. JC testified these uncharged acts occurred throughout the course of their marriage. These minor acts are not sufficiently relevant to appellant's motive or intent to commit any of the charged offenses against JC on a date certain. Even if the acts were relevant, their probative value was substantially outweighed by Mil. R. Evid. 403 concerns.

*Prejudice to Appellant*

Having determined the military judge improperly admitted evidence under Mil R. Evid. 404(b), we must now determine whether this error resulted in material prejudice to appellant's substantial rights. Article 59(a), UCMJ. "We evaluate prejudice from an erroneous evidentiary ruling by weighing (1) the strength of the government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999) (citing *United States v. Weeks*, 20 M.J. 22, 25 (C.M.A. 1985). Appellant was not materially prejudiced by the military judge erroneously admitting some uncharged acts.

Here, the government's case was strong. In addition to JC's testimony recalling all of the details of appellant's assaults against her, the government also corroborated her testimony with several other witnesses, an audio recording, photos of injuries, and appellant's own statements.

Four witnesses corroborated JC's testimony. JC's friend, SO, testified JC called her after the assault in Specification 3 of Charge III. JC's brother, BC, sister-in-law, CC, and friend, GS all testified JC told them appellant physically and sexually assaulted her. SO testified she observed injuries on JC's shoulder, arms, wrist, and face. SO took photos of these injuries which were admitted into evidence at trial. These injuries were further corroborated by CC, who testified she observed these injuries on JC in person.

The government also admitted into evidence a recording from August 2013, retrieved from appellant's cell phone. The recording contained audio of JC arguing with appellant about how he sexually abused her "all of the time."

The government's case was also strengthened by appellant's own statements to JC in a handwritten letter in which appellant admitted to "violating" JC. Appellant wrote:

> [JC], especially you – who are so fragel (sic), so tender and sensitive towards me – deserve boundaries. You have them and you know what they are when they have been violated – AND I have violated them

13

indeed! Since our wedding day I have exercised free reign over your body and thought that that was okay, that as your husband that was my right. What age am I living in, 1613? [...] I have violated you, our marriage, and our wedding vows. I have been that husband that no girl dreams and every father fears – I have been no husband at all.

The defense case was not strong. The crux of appellant's defense was that none of the charged allegations occurred and JC was fabricating the allegations as part of the divorce and child custody dispute. The four corroborating witnesses, photos of injuries, audio recording, and appellant's handwritten letter to JC undercut the defense's theory of the case.

The materiality and quality of the improperly admitted uncharged acts were low. The uncharged acts consisted of much less serious offenses or crimes than the charged offenses. The minimal relevance of the uncharged acts, which warranted their exclusion, negates their prejudicial impact on the proceedings.

Accordingly, we find the military judge's ruling under Mil R. Evid. 404(b) harmless because the government's case was strong and appellant's defense case was weak. *See United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999) (holding that when the remainder of the government's case was strong and the defense presented no evidence to contradict it, instead relying "on suggestion and insinuation," the Mil. R. Evid. 404(b) error was harmless); *United States v. Corbett*, 29 M.J. 253, 256 (C.M.A. 1989) (determining inadmissible Mil. R. Evid. 404(b) evidence had a minimal effect on the members considering all the other evidence presented at trial and the inadmissible evidence's tenuous relevance).

*Ineffective Assistance of Counsel*

To establish ineffective assistance of counsel, an appellant must demonstrate both (1) his counsel's performance was deficient, and (2) the deficiency resulted in prejudice. *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In order to establish deficient performance, an appellant must establish that counsel's "representation amounted to incompetence under 'prevailing professional norms.'" *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

Appellant claims his trial defense counsel were ineffective for failing to present evidence of his "pertinent character traits." Appellant does not specify which character traits. However, appellant references a forensic psychologist report conducted of appellant and submitted with his R.C.M. 1105 matters. Appellant directs this court's attention to a portion of the report, which states, "[...] anger and aggression were specifically considered and neither was not found to be a manifest problem. His level of anger-proneness appeared to be similar to that of the average

14

individual. There was no evidence of sadistic personality features. Neither was there evidence of serious sexual psychopathology." Appellant appears to be referencing evidence of a character for peacefulness. [13]

We find trial defense counsel's election to not present evidence of appellant's character for peacefulness to be a reasonable trial strategy. Had defense counsel presented this evidence, the government would have been permitted to rebut defense's assertion that appellant is a peaceful person. Moreover, we find the lack of evidence of appellant's character for peacefulness did not prejudice appellant. Appellant's own words to JC in a text message, "I'm still a bitter angry man. And I have impulses to cause hurt not only to myself but to those around me," greatly undermined any potential evidence of appellant's peaceful character. Additionally, appellant's handwritten letter to JC, JC's testimony, and the testimony of four other witnesses contradicted appellant's possession of a peaceful character.

Therefore, we find appellant has failed to meet his burden of showing he was denied effective assistance of counsel.

**CONCLUSION**

The findings of guilty and sentence are AFFIRMED.

Senior Judge CAMPANELLA and Judge SALUSSOLIA concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[13] To the extent appellant may also be referencing a "good soldier defense," we note Mil R. Evid. 404 was modified by the National Defense Authorization act for Fiscal Year 2015, Pub. L. No. 113-291, § 536, 128 Stat. 2268 (19 December 2014). Appellant's case was tried after this date. The modified rule prohibits an accused from offering evidence of his general military character for sexual assault offenses and "any other offense in which evidence of general military character of the accused is not relevant to any element of an offense for which the accused has been charged." Mil. R. Evid. 404(a)(2)(A) (2016 ed.). Even if appellant could have presented such evidence, we again note, it would have permitted the government to rebut this evidence with a deluge of appellant's specific violent acts. We find trial defense counsel's election to not present evidence of appellant's general military character to be a reasonable trial strategy.